MINNEAPOLIS MILL COMPANY *vs.* MINNEAPOLIS & ST. LOUIS RY. CO.

Argued Nov. 2, 1892.   Decided Nov. 17, 1892.

**Ejectment for Right of Way—Finding not Supported by the Evidence.**

Evidence *held* insufficient to justify a finding that the defendant entered and built its tracks upon the land of the plaintiff under an agreement or understanding that the plaintiff would give it the permanent possession of and right of way over such land for such purposes.

**Estoppel—Evidence Held not to Establish.**

*Held,* also, that the evidence failed to establish facts sufficient to create an estoppel against plaintiff from asserting the right to the possession of the land; that at most it proved merely an entry and occupancy by defendant under a license.

**License is Revocable Though Licensor Permits Improvements to be Made.**

> A mere license, not subsidiary to a valid grant, may be revoked at pleasure, and does not create or transfer any interest in the land, even though granted for a valuable consideration, and for a purpose which involves the expenditure of money upon the faith of it; and the mere fact that the licensor, without objection, permits the licensee to expend money on the land upon the faith of the license, will not operate as an estoppel.

**Evidence—Testimony of Witness at Former Trial—When Admissible.**

> The testimony of a witness, given on a former trial, and which has been taken down in full by an official court stenographer, is admissible in evidence upon another trial of the same issues between the same parties upon its appearing that the witness is a nonresident, and not within the jurisdiction of the court.

Appeal by plaintiff, the Minneapolis Mill Company, from an order of the District Court of Hennepin County, *Lochren*, J., made February 20, 1892, refusing a new trial.

This action was brought by the plaintiff to recover the possession of 11,900 square feet of land in the "Milling District" of Minneapolis, occupied by the tracks of the defendant, the Minneapolis and St. Louis Railway Company. The action was tried October 26, 1891, before the Judge, a jury being waived. The court decided that the defendant was entitled to the possession of the land in dispute, and ordered judgment accordingly.

By permission of the court, *Jackson & Atwater* and *Koon, Whelan & Bennett*, as counsel for plaintiff in actions pending in the District Court of Hennepin County, against the defendant in this case, involving similar questions, filed briefs in this case, and participated in the argument.

*Flannery & Cooke*, for appellant.

The court erred in finding that the plaintiff had ordered and procured the defendant to build the railroad tracks upon the land described in the complaint. There is no evidence to support the finding. Its purpose is to predicate an estoppel. To create an estoppel *in pais*, the party to be estopped must have clearly done or omitted

v.51m.—20

to do some act, or made or omitted to make some declaration, which has influenced the conduct of the party claiming the estoppel, and the act, declaration or answer must have been made to deceive or mislead the party who acted upon it. *Califf* v. *Hillhouse*, 3 Minn. 211, (Gil. 217;) *Mathews* v. *St. Paul & S. C. Ry. Co.*, 18 Minn. 434, (Gil. 392.) There can be no estoppel as to facts when they are equally known to both parties. *Plummer* v. *Mold*, 22 Minn. 15; *James* v. *Wilder*, 25 Minn. 305; *O'Mulcahy* v. *Holley*, 28 Minn. 31; *Chadbourn* v. *Williams*, 45 Minn. 294; *Minneapolis Trust Co.* v. *Eastman*, 47 Minn. 301; *Brant* v. *Virginia C. & I. Co.*, 93 U. S. 326.

The finding that there was an agreement that the plaintiff would give to defendant the possession of the land, is wholly unsupported by the evidence. There is no evidence as to what the agreement or "understanding" was, when it was made, or who made it on behalf of either party, unless the Washburns, as directors of the plaintiff, had a mental understanding with themselves as directors of the defendant. There is no evidence of even this, but at any rate their individual act as directors would not bind the corporation. *Baldwin* v. *Canfield*, 26 Minn. 43; *Peek* v. *Detroit Novelty Works*, 29 Mich. .313; *Mississippi & R. R. Boom Co.* v. *Prince*, 34 Minn. 79; *Soper* v. *Buffalo & R. R. Co.*, 19 Barb. 310; *Washington Bank* v. *Lewis*, 22 Pick. 24; *Allemong* v. *Simmons*, 124 Ind. 199. Being common directors in both corporations, they could not agree among themselves, so as to bind plaintiff in equity to buy and sell its land, much less to give it away. *Pearson* v. *Concord R. Co.*, 13 Am. & Eng. Ry. Cases, 102, 62 N. H. 537; *Metropolitan R. Co.* v. *Manhattan R. Co.*, 11 Daly, 377; *San Diego* v. *San Diego, etc., Ry. Co.*, 44 Cal. 106; *Pickett* v. *School District*, 25 Wis. 551.

The utmost that can be claimed for the evidence in this case is that the officers of the plaintiff knew that the defendant was occupying the land in controversy, and did not object thereto. This could amount to nothing more than a parol license to occupy the land for railroad purposes, which the plaintiff could revoke at any time. 1878 G. S. ch. 41, § 10; *Johnson* v. *Skillman*, 29 Minn. 95; *Olson* v. *St. Paul, M. & M. Ry. Co.*, 38 Minn. 479; *Wolf* v. *Frost*,

4 Sandf. Ch. 77.    The fact that the licensee is a railroad company, occupying the land with its tracks, does not change this well-settled rule. , 1878 G. S. ch. 34, § 33; *Shoemaker* v. *Cedar Rapids, I. F. & N. W. Ry. Co.,* 45 Minn. 366; *Watson* v. *Chicago, M. & St. P. Ry. Co.,* 46 Minn. 321; *Kremer* v. *Chicago, M. & St. P. Ry. Co., ante,* p. 15; *St. Louis Nat'l Stockyards Co.* v. *Wiggins Ferry Co.,* 112 Ill. 384.

The court erred in receiving the testimory of the witness Fuller, given on a former trial.    To make such testimony competent, it must appear that the witness is dead, or that he is absent by the procurement of the party against whom the testimony is offered. Nonresidence alone is not sufficient.    *Powell* v. *Waters,* 17 Johns. 176; *Wilbur* v. *Selden,* 6 Cow. 162; *Berney* v. *Mitchell,* 34 N. J. Law, 337; *Bergen* v. *People,* 17 Ill. 426.    At least when it appears that his place of residence is known, and his deposition might be taken if desired.    *Slusser* v. *City of Burlington,* 47 Iowa, 300; *Baldwin* v. *St. Louis, K. & N. R. Co.,* 68 Iowa, 37; *Gastrell* v. *Phillips,* 64 Miss. 473.

*Albert E. Clarke,* and *Wilbur F. Booth,* for respondent.

Appellant's counsel deny the existence of any agreement or understanding, as found by the court.    We contend that the evidence fully supports this finding.    The plaintiff needed railway facilities; defendant, at its request, supplied them, improved, perfected and made them permanent, constructed bridges and expended large sums of money, all with plaintiff's knowledge.    From these and the other conceded facts, the law implies *some kind* of a contract and understanding.    The trial court has found what that contract was.    If the evidence reasonably tends to sustain its decision, it must stand in this court.    The terms of this agreement were, that defendant was granted a right of way for its road, in consideration of furnishing railway facilities to plaintiff.    The question of whether the acts of the directors of a corporation bind it, and as to the validity of the agreement between the directors of plaintiff with the directors of defendant, is not in this case.    The corporation recognized, acquiesced in,

ratified and profited by this contract for sixteen years, and cannot now repudiate it by pleading lack of authority to make it. 1 Morawetz, Corp. §§ 22, 523, 577. Taylor, Corp. § 51; *Schurr* v. *New York & B. S. Inv. Co.*, 16 N. Y. Supp. 210.

The decision of the trial court seems to be based on the ground of contract; the same facts which are relied upon to establish the contract, constitute an estoppel. The courts have applied the doctrine of estoppel to cases of far less merit, and cases exactly in point are not wanting. *Dodd* v. *St. Louis & H. Ry. Co.*, 108 Mo. 581; *Omaha & N. N. R. Co.* v. *Redick*, 16 Neb. 313; *Taylor* v. *Chicago, M. & St. P. Ry. Co.*, 63 Wis. 327; *McAulay* v. *Western Vt. Ry. Co.*, 33 Vt. 311; *Brant* v. *Virginia C. & I. Co.*, 93 U. S. 326; *Brown* v. *Bowen*, 30 N. Y. 519. We do not claim an estoppel from the mere consent or license to enter on the land, but from the occupation for so long a time, under the particular circumstances of the case, without objection. *Faxton* v. *Faxon*, 28 Mich. 159; *Trustees Brookhaven* v. *Smith*, 118 N. Y. 634.

This is not a case of a mere license, revocable at the will of the grantor. The license is here coupled with a grant, or at least the grantor has so conducted itself as to induce the belief that there has been a grant, and the defendant having improved the land, the land owner cannot revoke the license. As to what acts and conduct render a license irrevocable, see *Ameriscoggin Bridge* v. *Bragg*, 11 N. H. 102; Bigelow, Estop. 505; *Long* v. *Buchanan*, 27 Md. 502; *Wickersham* v. *Orr*, 9 Iowa, 253; *Rhodes* v. *Otis*, 33 Ala. 578; *Flickinger* v. *Shaw*, 87 Cal. 126; *Veghte* v. *Raritan Water Power Co.*, 19 N. J. Eq. 142; *Clark* v. *Glidden*, 60 Vt. 702. All these cases hold that if the land owner stands by and sees the occupant permanently improve the property, and by his continued silence and conduct has induced the occupant to believe the grant to be permanent, the license becomes irrevocable.

The testimony of the witness Fuller, given on the former trial, was properly admitted in evidence. 1 Greenl. Ev. § 163; *Howard* v. *Patrick*, 38 Mich. 795; *People* v. *Devine*, 46 Cal. 46; *Magill* v. *Kauffman*, 4 Serg. & R. 317; *Labar* v. *Crane*, 56 Mich. 585; 1 Starkie, Ev. § 264.

MITCHELL, J.   This action, which is one in ejectment, was before this court on a former appeal.   46 Minn. 330, (48 N. W. Rep. 1132.)

On the first trial the district court held that the defendant had acquired title by dedication to a public use.   On the last trial it held, in substance, that it had acquired title through a parol contract or agreement with the plaintiff.   The principal question is whether this finding was justified by the evidence.

It is conceded that the title to the land was originally in the plaintiff, and, of course, still is, unless it has in some way transferred it to the defendant.   It is not pretended that the plaintiff ever executed any conveyance or any written agreement to convey to defendant; hence, if the title has ever passed, it must have been by virtue of matters entirely *in pais*.

The court finds that during the year 1870, and for more than 10 years thereafter, and until long after the defendant had taken possession of all the lands described in the complaint, and constructed its tracks thereon, William D. Washburn, C. C. Washburn, and Dorilus Morrison owned substantially all the capital stock of the plaintiff company, and, as its officers and directors, controlled its property, business, and affairs; that during the same time the plaintiff, its grantees and lessees, owned nearly all the water power and mill sites upon and along the west bank of the river at St. Anthony Falls; that during all of this time the two Washburns were stockholders and directors of the defendant company, and W. D. Washburn, as vice president or president of the defendant, had on its behalf the management, control, and direction of the location and construction of all its tracks, side tracks, and spur tracks upon the land in controversy, and upon or connected with the property of the plaintiff and the milling district in the city of Minneapolis.   We assume that thus far the findings are supported by the evidence.

The court then finds: "That during the same time the said plaintiff, by its said directors, for the purpose of increasing the value and availability for use of plaintiff's said property, and of increasing and hastening the development of manufacturing industries

thereon, induced and procured the defendant to build and construct its railroad tracks upon the land described in plaintiff's complaint, and upon the agreement and understanding that, in consideration of the special benefits and advantages to plaintiff from such construction of defendant's tracks at that place, plaintiff would give to the defendant the possession and right of way for such tracks over such land of plaintiff, to be occupied by such tracks, as was not included in the deed of plaintiff to the defendant of May 31, 1871.

"That, pursuant to such agreement and understanding, and at the instance of the Washburns, and with the full assent and knowledge of Morrison and all other directors and officers of the plaintiff, and for the special benefit and advantage of the plaintiff, as well as for the use and advantage of the defendant, the defendant, at its own cost, built and constructed permanently all its tracks described in the complaint, and entered into the possession thereof, and has ever since occupied the same as part of its railroad connecting its main line with its yard on the east of said land in dispute, and also connecting said main line and yard with its tracks to mills upon plaintiff's milling property; and that defendant's railroad tracks upon said land in dispute have greatly facilitated the carrying on of milling and manufacturing on plaintiff's property, and greatly benefited and increased the value of such property.

"That upon the taking by said defendant at plaintiff's request, and constructing thereon for plaintiff's benefit, but at its own cost, the railroad tracks of defendant, the plaintiff waived any further or other compensation for the land so taken than the special benefits to plaintiff's remaining property resulting from the construction and permanent use in that place of such railroad tracks. That, besides the cost of construction of said tracks, defendant has since, to the knowledge of plaintiff's directors and officers, expended large sums of money in repairs and replacement of such tracks and in construction of bridges for such tracks over said avenue, [10th avenue south,] without any objection by plaintiff, or any notice that defendant's right to maintain and occupy said land permanently with said tracks was denied or disputed by plaintiff."

An examination of the record compels the conclusion that these findings, so far as material to the issues in the case, are not supported by the evidence.

There is no doubt of the correctness of the proposition announced by the trial judge in his memorandum, that, if a landowner, in consideration of special benefits to his property to be derived from railroad facilities, agrees to give the right of way to a railroad company, and accepts such special benefits as full compensation, and the railroad company accepts the offer, and builds its road, and affords such special benefits, the contract is as binding as if the railroad company had paid for the right of way in money. But the difficulty in this case is that there is an entire lack of evidence of any such agreement. There is not an intimation by any witness that any express agreement to that effect was ever made. If found to exist, it must be wholly implied from the conduct of the parties. What the learned trial judge probably meant was that the conduct of the plaintiff had been such as to estop it from now denying that there was such an agreement, and that consequently the situation is to be treated as equivalent to part performance of a parol agreement for the sale of an interest in real estate.

But the case is equally lacking in the essential elements of an estoppel *in pais.* Doubtless the plaintiff was interested in having defendant's road extended down into the milling district, thereby enhancing the value of its property. But the defendant was organized for pecuniary profit, and doubtless expected a return for its expenditures from the business to be obtained from the mills and other manufactories in that locality.

In view of this and the additional fact that the same men were the active managers of both corporations, it was naturally to be expected that they would to a certain extent work together for their common interests. But, as both were acting through the Washburns as their common agents, it can hardly be claimed that one was misled or deceived by the acts or conduct of the other.

It appears that in 1871 the defendant purchased of the plaintiff a tract of land south of the milling district proper for terminal grounds; also that other tracts in that vicinity were at different dates pur-

chased of plaintiff by defendant. It also appears that in 1871 the defendant built a track down Second street, to the terminal grounds already referred to, and that this track was the only one built until 1875 or 1876. It further appears that some condemnation proceedings were instituted to secure the right of way for this track, but finally, on September 20, 1873, the plaintiff conveyed to defendant for right of way purposes a strip through its property, 30 feet wide, being 15 feet on each side of the center line of this track. The boundaries between the lands of the plaintiff and those of the defendant were undefined, and undefinable except by actual survey. Subsequently to 1875 or 1876, additional tracks seem to have been built from time to time, as the increasing business of the railway company and of the mills in that vicinity required, some of which were outside of the land of the railroad company, and upon the land of the mill company, as subsequent surveys have proven. No witness testifies to any conversation or transaction pertaining to the building of any of these tracks, or to the facts or circumstances of the first occupation of the land in controversy by them. It does not appear that when they were built either plaintiff or defendant knew they were on plaintiff's land. In fact it affirmatively appears that when Washburn caused them to be constructed he supposed they were being built on the land owned by the railroad company, and that he did not knowingly or intentionally construct tracks upon land not acquired by it by contract or deed from the mill company. It also appears that the mill company did not know that the tracks extended over onto its land until a survey was made in 1886 or 1887. There is also an entire lack of evidence that the mill company either requested or induced the railway company to build these tracks where they are located or at all. The facts probably are that neither party knew exactly where the lines of their respective properties were, and that, so long as their interests did not conflict, neither was very particular to ascertain.

The most, we think, that can be possibly claimed from the evidence is that the tracks were built under a parol license from plaintiff; and there is nothing better settled than that a mere license, not subsidiary to a valid grant, may be revoked at pleasure, and does not

create or transfer any interest in land, even though granted for a valuable consideration, and though the license may be for a purpose which involves the expenditure of money upon the faith of it. The mere fact that the mill company might have, without objection, permitted the railway company to expend large sums of money in building tracks on the land on the faith of the license would not operate as an estoppel. A licensee is conclusively presumed, as a matter of law, to know that a license is revocable at the pleasure of the licensor; and if he expends money in connection with his entry upon the land of the latter he does so at his peril. Any other doctrine would render most licenses irrevocable, and make them operate as conveyances of an interest in land. As to private persons entering as licensees, the rule is well settled everywhere. In some jurisdictions a partial exception seems to have been made in favor of railway companies, the courts holding that, if a railway company has entered and built its road under license from the landowner, he will be barred from maintaining ejectment, but will be left to his action or proceedings to recover compensation for the permanent taking of the land. This seems to be placed on the ground that considerations of public policy forbid that the continuous operation of the road should be interrupted. But this distinction in favor of railway companies has been expressly repudiated by this court for reasons stated in *Watson* v. *Chicago, M. & St. P. Ry. Co.*, 46 Minn. 321, (48 N. W. Rep. 1129.)

The principle upon which courts of equity sometimes apply the doctrine of equitable estoppel to cases where the entry has been under a license is that the conduct of the licensor has been such that it would be a fraud on the licensee to permit the licensor to deny that there was a contract for an interest in the land, and hence they treat the case as one of a parol contract partly performed, which the court will enforce. But in this case there was an entire absence, not only of any actual contract between the parties, but also of any fraud, deception, or misrepresentation. If neither party knew that these tracks were being built on plaintiff's land, of course there could have been no deception, nor could either party have been misled by the other. On the other hand, if both parties were aware of the fact, and the plaintiff gave defendant license, either express or implied

from acquiescence, to enter its land, there was still no deception or misrepresentation. All that defendant could complain of in such case is that plaintiff has seen fit to revoke a license, which perhaps the defendant thought would never be revoked.

Again, if any implied agreement as to defendant's occupancy of plaintiff's land could be inferred, the terms are so indefinite and uncertain as to the extent or character of the privilege given, if any, that it would be utterly impossible to determine what it was. How many tracks, or where to be located, no court could possibly determine from any evidence in the case. The fact is that the entire evidence is of the most nebulous and illusive character. Throughout the entire case there seems to have been a commingling and confounding of various and independent entries upon plaintiff's land, as well as upon the land of other parties, at wholly distinct periods of time, and an attempt to treat the evidence as to all as applicable to and determinative of the legal character of each, which could only be permissible if there had been some previous agreement between the parties under which all the entries had been made, and to which they were referable.

Without going further for authorities, it seems to us that, under the present condition of the evidence, the principles announced in *Watson* v. *Chicago, M. & St. P. Ry. Co., supra,* and *Johnson* v. *Skillman,* 29 Minn. 95, (12 N. W. Rep. 149,) are entirely decisive of this case.

2. Upon the question as to what land was conveyed by plaintiff to defendant by the deed of September 20, 1873, which depended upon the location at that date of defendant's original track, which was made the center line of the strip conveyed, all we deem necessary to say is that the evidence fully justified the finding of the trial court.

3. On the first trial the defendant produced a witness, one Fuller, who was examined and cross-examined, and his testimony taken down in full by the official reporter or stenographer of the court. Upon the second trial, it being made to appear that Fuller was a nonresident of this state, and a resident of the state of Washington, and had at no time since the first trial been within this state, the court, under the objection and exception of the plaintiff, admitted

the testimony of the witness as given on the first trial.   As to when the testimony of a witness given on a former trial of the same issues between the same parties should be admitted in evidence, the courts, both English and American, are not entirely agreed.   Starkie, in his work on Evidence, (page 310,) says the prevailing English rule is to admit the deposition of the witness, not only where it appears that he is dead, but in all cases where he is dead for all the purposes of evidence; as, where he cannot be found after diligent search, or resides in a place beyond the jurisdiction of the court, or where he has become a lunatic or attainted.

In Greenleaf on Evidence (section 163) the rule is laid down quite as broadly.   This, however, has been criticised as too broad by some courts, which hold that, to make the testimony admissible, it must appear that the witness is dead, insane, or by physical disability at the time of the trial unable to be examined, or that he is absent by the act or procurement of the party against whom the evidence is offered, or that his whereabouts cannot be ascertained, so that by the exercise of due diligence his deposition could not be taken.   See 1 Greenl. Ev. § 163, and note; 1 Phil. Ev. 393, and note 114.

The admission of the testimony of a witness on a former trial is frequently inaccurately spoken of as an exception to the rule against the admission of hearsay evidence.   The chief objections to hearsay evidence are the want of the sanction of an oath, and of any opportunity to cross-examine, neither of which applies to testimony given on a former trial.   The real objection to such evidence is that it is only the testimony of some one else as to what the witness swore to on the former trial; and before the day of official reporters in our trial courts the accuracy or completeness of such evidence depended entirely upon the fallible memory of those who heard the witness testify.   It can be readily seen why, under such circumstances, courts were disinclined to admit such evidence except in cases of actual necessity.   But where the words of a witness as they come from his lips are taken down in full by an official court stenographer, this objection does not apply.   We do not see why such testimony is not as satisfactory and reliable as a new deposition, taken out of the state, would be.   Rules on such subjects should be practical, and

subject to modification as conditions change. We think the evi-
dence was properly admitted, but for reasons already given the order
appealed from must be reversed, and a new trial granted.

(Opinion published 53 N. W. Rep. 639.)