ROBERT ENTWHISTLE

*v.*

ANNA C. HENKE *et al.*

*Opinion filed October 24, 1904.*

1. STATUTE OF FRAUDS—*right to mine ore must be conferred in writing.* The right to enter upon lands of another and mine ore is an interest in land, and, by the Statute of Frauds, contracts conferring that right must be in writing.

2. LICENSE—*parol license to mine ore may be revoked.* A parol license to mine ore on the lands of the licensor, although sufficient to justify acts of the licensee before revocation, is revocable at the option of the licensor, notwithstanding the licensee has expended money, incurred liabilities or made improvements on the faith of the license.

APPEAL from the Appellate Court for the Second District;—heard in that court on appeal from the Circuit Court of JoDaviess county; the Hon. JAMES S. BAUME, Judge, presiding.

W. T. HODSON, and F. J. CAMPBELL, for appellant:

A licensor is equitably estopped from revoking an executed license under which the licensee has incurred expense and made improvements. 18 Am. & Eng. Ency. of Law, (2d ed.) 1145; 13 Am. & Eng. Ency. of Law, (1st ed.) 548, 551; Goddard on Easements, 471; *Water-works Co.* v. *Kansas City,* 65 Fed. Rep. 691; *Rhodes* v. *Otis,* 33 Ala. 578; *Wynn* v. *Garland,* 19 Ark. 23; *Smith* v. *Green,* 109 Cal. 228; *Grimshaw* v. *Belcher,* 88 id. 217; *Flickenger* v. *Shaw,* 87 id. 126.

Incurring expense and making lasting improvements by the licensee is sufficient to take the case out of the Statute of Frauds and to authorize specific performance. 18 Am. & Eng. Ency. of Law, (2d ed.) 1147; 8 Am. & Eng. Ency. of Law, (1st ed.) 738; *Wallace* v. *Scoggin,* 17 Ore. 476.

A license cannot be revoked without compensation to the licensee for his expenditure. *Bush* v. *Sullivan,* 3 Iowa, 344;

211—18

*Lane* v. *Miller,* 27 Ind. 534; *Addison* v. *Hack,* 2 Gill, 221; *Fuhr* v. *Dean,* 26 Mo. 116; *Woodbury* v. *Parshley,* 7 N. H. 237; *Ameriscoggin Bridge* v. *Bragg,* 11 id. 102; *Bartlett* v. *Prescott,* 41 id. 493.

A written license is as revocable as an oral one, even if the writing is under seal. 18 Am. & Eng. Ency. of Law, (2d ed.) 1145; *Kimball* v. *Custer,* 73 Ill. 384.

A mining license cannot be revoked without reimbursement to licensee for expenditures and improvements. *Bush* v. *Sullivan,* 3 Iowa, 244; *Beatty* v. *Gregory,* 17 id. 109; *Upton* v. *Brazier,* 17 id. 153; *Anderson* v. *Simpson,* 21 id. 399; *Harkness* v. *Burton,* 39 id. 101; *Hosford* v. *Metcalf,* 84 N. W. Rep. 1054; *Silsby* v. *Trotter,* 29 N. J. Eq. 228.

M. J. DILLON, for appellees:

No action shall be brought to charge any person upon any contract for the sale of lands, or any interest in or concerning them, for a longer term than one year, unless such contract, or some memorandum or note thereof, shall be in writing and signed by the party to be charged therewith, or by some other person thereunto by him lawfully authorized in writing, signed by such party. Hurd's Stat. chap. 59, sec. 2.

Any mining right, or the right to dig for or obtain iron, lead, copper, coal or other mineral from land, may be conveyed by deed or lease, which may be acknowledged and recorded in the same manner and with like effect as deeds and leases of real estate. Hurd's Stat. chap. 94, sec. 6; *Lear* v. *Chouteau,* 23 Ill. 37.

Coal and minerals in a mine under the ground are real estate, and as such are capable of being conveyed like any other real estate. *Manning* v. *Frazier,* 96 Ill. 279.

It makes no difference that the licensee may have acted upon the strength of the parol license and erected valuable buildings or made valuable improvements; the license is revocable nevertheless, at the will of the licensor. *Woodward* v. *Seely,* 11 Ill. 157; *Kimball* v. *Yates,* 14 id. 464; *Kamphouse* v. *Gaffner,* 73 id. 453; *Tanner* v. *Volentine,* 75 id.

624; *Stock Yards Co.* v. *Ferry Co.* 112 id. 384; *Dwight* v. *Hayes,* 150 id. 273; *Wilmington Water Power Co.* v. *Evans,* 166 id. 548; *Lamb* v. *Manning,* 171 id. 612; *Ragain* v. *Stout,* 182 id. 645.

Mr. JUSTICE BOGGS delivered the opinion of the court:

This appeal has been perfected to reverse the judgment of the Appellate Court for the Second District affirming the decree of the circuit court in and for JoDaviess county dismissing a bill in chancery filed by the appellant against the appellees, for want of equity.

The bill sought the enforcement of an alleged oral license made by appellee Henke, authorizing the appellant to mine for and remove lead ore from a certain parcel of real estate owned by the said appellee. The appellee Henke subsequently sold and conveyed the land to the appellee DeVry, but, as appellant contended, under such circumstances that the grantee was chargeable with full knowledge of the rights of the appellant and held subject thereto. The Statute of Frauds was pleaded as a defense to the enforced performance of the alleged oral agreement.

The right to enter upon real estate and dig for and remove ore is an interest in land, and by the Statute of Frauds contracts conferring that right are required to be in writing. *Lear* v. *Chouteau,* 23 Ill. 37.

The position of the appellant was and is, that the appellees had become estopped to urge the application of the Statute of Frauds as a defense for five certain reasons which he alleges were disclosed in the proofs, viz.: (1) That it was executed; (2) that great expense was incurred and valuable and lasting improvements made on the faith of it; (3) that a consideration was paid for it; (4) that complainant was urged and persuaded to go upon the land to mine; (5) that an express promise was made by the owner, and by her agent in her presence, that the letting would never be repudiated or canceled as long as the complainant worked in a miner-like manner, and when complainant repeatedly besought the

owner and her agent to give him a written instrument, it was represented to him, and he was assured by the owner's agent,—and that, too, in her presence,—that he was safer under the verbal letting than a written one, which assurances and representations complainant believed and relied upon.

Whether the facts relied upon to establish these alleged reasons of avoidance of the Statute of Frauds were sufficient, in legal point of view, to overcome the statute, was questioned by a demurrer which was overruled, and the truth thereof was afterwards denied by the appellees by their answer, and the legal insufficiency of the alleged facts to avoid the statute was again asserted in the answer.

The cause was submitted to the chancellor on the bill, answer and replication, and on the proofs, oral, documentary and written, taken and heard in the cause, and we might dispose of the contentions of the appellant by the observation that we cannot say, from the evidence, that the chancellor was palpably in error in refusing to hold that the preponderance of the proof supported the facts as alleged by the appellant as sufficient to avoid the operation of the Statute of Frauds. The contract as alleged by appellant is, that he should mine for lead and other ores in the lands, and should pay as rent or royalty the one-seventh of all ore raised in dry ground and one-ninth raised in wet ground, and should conduct such operations in a miner-like manner. The contract was executory. The evidence touching upon the contention that the appellee Henke, in order to induce the appellant to accept a parol license, expressly agreed that she would not repudiate or cancel, was conflicting, being positively denied by the appellees; and apart from the question whether the operation of the Statute of Frauds may be avoided in this manner, the decree as to this point would, of necessity, be affirmed on the ground we could not say it was palpably against the weight of the testimony.

We think the license was revocable. This court is, and from a very early day in its history has been, committed to the doctrine that a parol license to do an act on the land

of the licensor, though it may be sufficient to justify acts of the licensee done before formal revocation, is nevertheless revocable at the option of the licensor, and notwithstanding the licensee had expended money or incurred liabilities, or even made improvements, on the faith of the license. (*Woodward* v. *Seely,* 11 Ill. 157; *Russell* v. *Hubbard,* 59 id. 335; *Tanner* v. *Volentine,* 75 id. 624; *Kamphouse* v. *Gaffner,* 73 id. 453; *St. Louis National Stock Yards Co.* v. *Wiggins Ferry Co.* 112 id. 384; *Village of Dwight* v. *Hayes,* 150 id. 273; *Lambe* v. *Manning,* 171 id. 612.) In *National Stock Yards Co.* v. *Wiggins Ferry Co. supra,* the correctness of the doctrine announced in the earlier case of *Woodward* v. *Seely, supra,* was attacked and we were asked to depart from it, but we said (p. 394) : *"Woodward* v. *Seely* has never been overruled or directly questioned by this court, that we are aware of, and we think it must govern this case. It has stood so long as the rule in this State that we are disposed to adhere to it without entering upon consideration of whether or not it might be the proper one to adopt were the question now an original one before this court." And in the opinion in the same case, on rehearing, we again said: "The case of *Woodward* v. *Seely,* 11 Ill. 157, cannot be distinguished from the present one, and the authority of that case, standing, as it does, in line with the decided weight of authority, has been too long recognized by this court as a correct exposition of the law upon the question involved to be now overruled without any special reason for doing so. A contrary conclusion cannot be placed upon any grounds, however plausible, which are not fully met by the *Woodward-Seely case,* and many others adopting the same view of the law. Moreover, the conclusion reached is in harmony with other well settled principles of law; the contrary view is not." Since then, in the several later cases involving the question, we have uniformly accepted,—indeed, re-affirmed, —the doctrine of the case of *Woodward* v. *Seely.* If the rule is harsh and unjust in its operation, the remedy must now be afforded by enactments of the law-making body of the

State. The fact that the General Assembly has not, in the many years that have elapsed since the decision was rendered in *Woodward* v. *Seely,* been moved to adopt some corrective enactment, would seem to indicate very strongly that the doctrine had proved to be wholesome and satisfactory and not harsh or unjust. The rule is founded in considerations of good public policy, which forbids the burdening of lands with restrictions founded only on alleged oral agreements easily misunderstood. The security and certainty of titles to land is of the utmost public importance, and the rule that defects therein and qualifications thereof should not rest in mere oral contracts should not be departed from in order to save parties from the consequences of their own carelessness or credulity. A custom or usage in mining districts that a miner or prospector who had gone upon the premises of another to mine under an oral license should be allowed to remain there and work out the "prospect" of ore that he had discovered, against the will of the owner of the property, would be opposed to the well established principles of law declared in the Statute of Frauds, and even if such custom and usage had been proven it could not prevail against or overcome the statute. (*Bissell* v. *Ryan,* 23 Ill. 517; *Western Union Cold Storage Co.* v. *Winona Produce Co.* 197 id. 457.) But we may also remark, that upon an examination of the record we are not prepared to say that the existence of any such custom or usage was proven. The testimony touching upon the question was conflicting, and we would not be justified in declaring that the chancellor erred in regarding the alleged custom to have been not proven.

There is a like conflict in the proof on the question whether the work done by the appellant in pursuance of the license was an improvement or a detriment. He excavated a tunnel, beginning on the bank of the Mississippi river just above low-water mark and extending nearly on a level two thousand feet or thereabouts, into the hill. When the water in the river was above the ordinary stage it would flow through this tunnel back into the hill and flood it, and the

appellees claim that the tunnel was injurious rather than beneficial to their land, and that the modern method of mining is by sinking a shaft from the top of the hill to the vein of ore and using a pump to remove any water that may gather in the excavation. However that may be, the established doctrine in this State is that the mining license was revocable at the option of the licensor, and that the licensee, in expending money, must be presumed to do so in view of the right of revocation, and that a court of equity will not enforce the license or estop the revocation thereof on the ground that valuable improvements have been made by the licensee.

Finding no error in the record the judgment of the Appellate Court is affirmed.          *Judgment affirmed.*