NICHOLAS MUNSCH v. JULIUS STELTER and Another.[1]

January 7, 1910.

Nos. 16,340—(138).

**Estoppel — Obstruction of Ditch.**

When, pursuant to a verbal contract, the owners co-operate in the construction of a ditch for the purpose of draining their lands, the equitable doctrine of estoppel will prevent one of them from damming up the ditch to the detriment of the other.

Action against Julius Stelter and Charles Maasch in the district court for Redwood county to restrain defendants from damming and obstructing a ditch, to compel them to remove the obstructions during the pendency of this action, and for damages in the sum of one hundred dollars. The answer admitted the oral agreement and the construction of the ditch, as mentioned in the opinion, set up that there was no note or memorandum in writing, that the ditch was constructed on condition that if it failed to carry the water from the lands of plaintiff and across and beyond defendants' lands, or caused defendants' lands to be overflowed, then defendants had the right to fill the ditch and stop the water flowing upon defendants' lands, and that the ditch did not carry the water from defendants' lands, but caused great damage. The answer also set up that contrary to the terms of the agreement plaintiff constructed a tile drain connecting a large slough with said ditch, and caused a large volume of water

[1]Reported in 124 N. W. 14.

from said slough to run upon defendants' land, and to preserve their lands from further damage defendants closed said ditch. The case was tried before Olsen, J., who, at the close of the trial denied defendants' motion to dismiss the case, made findings as stated in the opinion and ordered that a permanent injunction issue commanding defendants to remove the obstructions and to refrain from obstructing the ditch. From the judgment entered pursuant to the order, defendants appealed. Affirmed. ···

*William G. Owens* and *Somerville & Hauser*, for appellants.

*C. T. Howard*, for respondent.

LEWIS, J.

Action to enjoin appellants from damming up a ditch constructed by the joint co-operation of respondent and appellants over a part of the lands of each for the purpose of draining, in part, the lands of both. The court found that the parties entered into an oral agreement for the purpose of draining and benefiting the lands of each, whereby it was mutually agreed to construct a ditch, commencing upon respondent's land and running for a considerable distance over appellants' land into an outlet consisting of a lake or slough; that it was agreed that each of the four owners should pay one-fourth of the cost of constructing the ditch; that pursuant to the agreement the ditch was dug, and each of the owners paid one-fourth of the cost thereof, amounting to $69 each; that the ditch as constructed served the purpose of draining and materially benefiting the lands of all the parties, draining practically all of respondent's wet land and part of the land of each of the appellants; that about two years thereafter appellants, without the knowledge and consent of respondent, obstructed the ditch by damming it at a point on appellants' land, which resulted in obstructing the flow of water from respondent's land, but did not interfere with the drainage of appellants' land.

The question before the court is whether the verbal agreement became executed to such an extent as to estop appellants from asserting that it was void under the statute of frauds.

It is elementary that a verbal contract for an easement over the real estate of another, unexecuted and unaccompanied by any other

circumstances, is contrary to the statute of frauds, and does not convey any interest in the real estate. But there is a wise exception, founded on the accepted rules of conduct, and where an entry is made under a license, and the conduct of the licensor is such that it would be a fraud on the licensee to permit the licensor to revoke it, the doctrine of equitable estoppel applies. The facts of this case bring it within this exception. In some of the leading cases on the subject the verbal contract was for the conveyance of specific real estate, and in such cases, when one party has executed the contract, equity will resist its repudiation. Van Horn v. Clark, 56 N. J. Eq. 476, 40 Atl. 203. But the doctrine is not limited to contracts for the conveyance of specific real estate. In some jurisdictions mere acquiescence of the licensor in the expenditure of money or labor by the licensee in the execution of the license does not have the effect of preventing revocation. Cronkhite v. Cronkhite, 94 N. Y. 323; Entwhistle v. Henke, 211 Ill. 273, 71 N. E. 990, 103 Am. St. 196; Carleton v. Redington, 21 N. H. 291; Pitzman v. Boyce, 111 Mo. 387, 19 S. W. 1104, 33 Am. St. 536; Nowlin v. Wilson, 119 Mich. 406, 78 N. W. 338; Thoemke v. Fiedler, 91 Wis. 386, 64 N. W. 1030. In other jurisdictions the courts have extended the doctrine of equitable estoppel to cases of that character (Rerick v. Kern, 14 Serg. & R. 267, 16 Am. Dec. 497; Robinson v. Luther, 140 Iowa, 723, 119 N. W. 146), to a limited extent (Clark v. Glidden, 60 Vt. 702, 15 Atl. 358; Garrett v. Bishop, 27 Ore. 349, 41 Pac. 10; Stoner v. Zucker, 148 Cal. 516, 83 Pac. 808, 113 Am. St. 301).

So far as this court has spoken, mere assent by the licensor to the execution of the license does not avoid the operation of the statute of frauds. In Johnson v. Skillman, 29 Minn. 95, 12 N. W. 149, 43 Am. Rep. 192, the defendants claimed that, under a verbal agreement with plaintiff's grantor, defendants had the right to maintain the dam so long as their flouring mill, connected with it, should be kept and operated as a custom mill. The court held that the defendants were not entitled to the relief sought, for three reasons: First, that the terms of the agreement relied upon by the defendants were too general and indefinite; second, that defendants did

not rely upon such an agreement except in part; and, third, that there was an adequate remedy at law by proceeding to secure the right of flowage. In Wilson v. St. Paul, M. & M. Ry. Co., 41 Minn. 56, 42 N. W. 600, 4 L. R. A. 378, the plaintiff had constructed a drain, at his own expense, from his land over the adjoining land of the defendant's grantor, and it was held that the drain had been maintained across the land by mere parol license of the owner, and that the latter might revoke the same and proceed to use the land as though the drain was not there, without giving any notice to the licensee. Minneapolis Mill Co. v. Minneapolis & St. L. Ry. Co., 51 Minn. 304, 53 N. W. 639, has a closer bearing. An action was brought by the plaintiff to recover possession of certain land in the milling district of Minneapolis occupied by the tracks of defendant's railway. Defendant claimed the right to occupy the land under a verbal license from the plaintiff, and that the plaintiff waived any other compensation than the special benefits to plaintiff's remaining property resulting from the construction and permanent use of the railroad tracks in that locality. The court held that there was an entire lack of evidence to support such claim, or that the plaintiff requested and induced the defendant to construct the tracks where they were located, and stated that the most defendant could claim from the conversations referred to was that the tracks were built under a parol license from the plaintiff, and it was held that the licensee was conclusively presumed, as a matter of law, to know that such a license was revocable at the pleasure of the licensor, and, if it expended money in connection with its entry on the land, it did so at its peril.

But for the purpose of this case we may concede that a licensor may stand by and witness the expenditure of money, or its equivalent in labor, in pursuance of a verbal license. Here, however, the appellants did more than that. They not only granted the right to respondent to go upon their land and construct a ditch, but joined in the enterprise and accepted the benefits of respondent's labor and expense in completing the system of drainage. An after attempt to exercise the right of revocation by damming up the ditch, thus depriving respondent of all benefits from its construction while they

retain it for their own use, operated as a fraud upon him, and a court of equity will interfere to restrain it. Vannest v. Fleming, 79 Iowa, 638, 44 N. W. 906, 8 L. R. A. 277, 18 Am. St. 387; Ferguson v. Spencer, 127 Ind. 66, 25 N. E. 1035, and Gilmore v. Armstrong, 48 Neb. 92, 66 N. W. 998, are cases similar in the facts.

The same principle controls the construction and maintenance of irrigation ditches. Gooch v. Sullivan, 13 Nev. 78.

There was some evidence tending to show that plaintiff had extended the drainage system beyond what was contemplated by the parties. There were no findings, and no requests for findings, with reference to this question, and it cannot be considered. But we are not to be understood as holding that a party to a transaction of this character may not in a proper action prevent the construction of additional ditches for the purpose of extending the drainage system beyond the limits originally contemplated.

Affirmed.

O'BRIEN, J. (dissenting).

I dissent. In my judgment, the most that can be said in favor of plaintiff's claim is that he had a license from the defendants to turn the surface water from his land into the ditch located upon the defendants' lands; a license revocable at the will of the defendants, without notice, and, having been so revoked, the plaintiff was not entitled to relief.