Donna Lee LARSON, Appellant,

v.

Duane S. AMUNDSON, et al.,
Respondents.

No. C0–87–250.

Court of Appeals of Minnesota.

Oct. 13, 1987.

Patrick J. Neaton, Muenzer & Neaton, Minneapolis, for appellant.

Charles R. Kennedy, Kennedy & Nervig, Wadena, for respondents.

Heard, considered and decided by POPOVICH, C.J., and WOZNIAK and NIERENGARTEN, JJ.

## OPINION

WOZNIAK, Judge.

This is an appeal from an action commenced by appellant Donna Larson seeking a declaration that she is entitled to a permanent access easement in the form of a driveway across property owned by respondents Duane and Estelle Amundson. The trial court found appellant had no easement, and she appeals the judgment dismissing her claim. We affirm.

## FACTS

In 1955, Melvin and Rosalie Nyhus began selling lakeshore lots on a large wooded area of property located between the southern shore of West Leaf Lake and Trunk Highway 108 in Otter Tail County, Minnesota [see diagram]. Appellant and her husband purchased one of the first lots on the eastern side of the property. The Nyhuses eventually sold additional lots along the lakeshore located west of the Larson's lot and reserved the eastern-most section of the property for themselves. An old dirt trail ran across the property from the highway to the eastern edge of the lakeshore lots. The trail was located on the undeveloped portion of the property the Nyhuses had reserved for themselves.

Between 1955 and 1961, Nyhuses conveyed seven lakeshore lots by warranty deeds which contained a provision granting the buyers ingress and egress to their lots "on a road to be laid out" by the Nyhuses. However, the Nyhuses did not immediately lay out the new road and continued to permit the lot owners to use the original trail for access. The Nyhuses gave appellant.permission to clear a 50–70 foot road from their property over the Nyhus property to reach the original trail and Highway 108. To gain access to the lots from 1958 to 1966, all the lot owners continued to use the original trail, as well as an old logging trail which ran along the back of each lot. During this period, Nyhus was never asked by the lot owners to "lay out" the access road as covenanted in the deeds.

In 1961, appellant's husband purchased two more lots from the Nyhuses, with both warranty deeds granting the right of access to the lots on "a road to be laid out" by the Nyhuses. In 1965, appellant's husband resold the lots, with the deeds also containing language granting access on a road to be laid out in the future.

In 1966, respondent and his brother purchased the eastern portion of the property originally reserved by the Nyhuses. The deed respondent accepted from the Nyhuses did not reserve any access easement on their behalf or burden the land with any easement or servitude. Apparently because they no longer owned the property in which the original trail was located, shortly after the sale to respondent, Nyhus constructed a new gravel access road as required in the deeds. This new road was located on property the Nyhuses still owned, and ran from the highway to the lakeshore lots on the western side of the property. Appellant retained access to the new roadway by following the road located behind the lakeshore lots. In 1977, the Nyhuses sold the remaining portions of their property, including the portion over which the new road was constructed. In this deed, a specific exception was made for the lakeshore lots previously conveyed.

The new road was used by all the lot owners except appellant, respondents and one additional lot owner. The same year the Nyhuses constructed the new road, respondents constructed, at their own expense, a driveway located entirely on their property. This new driveway followed a significant portion of the original trail, but branched off the original trail westerly until it entered Highway 108.

Respondents contend they granted appellant and her husband permission to use the new driveway and permission to continue using the road the appellants cleared over respondents' property to reach the new driveway. They testified that appellant's husband regularly would request permission to use the driveway. Appellant, on the other hand, claims respondents obtained their permission to construct the new driveway and that they continued to use it without any express permission from respondents. Further, appellant claims that respondents never objected to her continuous use of the driveway, while respondents stress that appellant never claimed a right to access over their land. Nonetheless, both parties continued to openly use the driveway.

In 1973, the parties split the cost of paving the driveway to the points where the driveway turned off to the individual residences. Appellant's cost totaled $1,800, with another $515 in 1980 for maintenance. The third landowner using the driveway also contributed to the 1980 maintenance costs, and respondents denied his request to purchase an easement to use the driveway.

Respondents later installed a locked gate at the driveway's entrance to Highway 108 and furnished appellant with a key. Respondents next installed a gate across the roadway appellant's husband had cleared at the point where the roadway crossed respondents' property. Appellant also was given a key to the lock on this gate.

Finally, in 1983 respondents replaced the second gate with a fence. The fence was constructed after respondents returned from vacation and found the gates unlocked and left open. They also found some of their property had been damaged and stolen. Because appellant and her husband possessed the only other key, respondents held them responsible and revoked their permission to use the driveway. Appellant was then forced to use the less-convenient new roadway.

Appellant initiated this action seeking a declaration she was entitled to a permanent access easement across respondents' property. She claimed the existence of an express grant with a fixed location defined by their constant use of the driveway, that a prescriptive easement was created, and that respondents were estopped from denying existence of the easement.

The trial court found that appellant held no easement to cross respondents' property and use the driveway. The court found that the Nyhuses and all subsequent grantees, including appellant, had intended that Nyhus would lay out the access road at a later date as reserved in the deeds. The court found that Nyhus permitted use of the old roadway until the right reserved in the deed to designate the right of access was exercised in 1966. Further, the court determined appellant's use of respondents' new driveway was permissive and that appellant had never designated the easement's location. The court thus dismissed appellant's claim after concluding that no easement existed, and she appeals.

## ISSUES

1. Did the trial court err in finding the original roadway was not a fixed easement and that the right to designate the new roadway was retained?

2. Did appellant establish the right to use the new driveway through easement by prescription?

3. Did appellant establish the right to use the new driveway through an irrevocable license?

4. Are the trial court's findings supported by the evidence?

## ANALYSIS

The record indicates that appellant did not make a motion for a new trial

and that this appeal is from the judgment entered pursuant to the trial court's findings and conclusions. When there has been no motion for a new trial, the scope of review is limited to determining whether the evidence sustains the findings of fact and whether such findings sustain the conclusions of law and judgment. *Gruenhagen v. Larson,* 310 Minn. 454, 458, 246 N.W.2d 565, 569 (1976).

1. The language of the deed expresses the final, binding agreement between the grantor and grantee. *Hubachek v. Brown,* 126 Minn. 359, 362–63, 148 N.W. 121, 122 (1914). Here, the language in the deed created an easement granting appellant "a right of ingress to and egress from the lands herein described on a road to be laid out by [Nyhuses]." The scope of an easement created by express grant depends entirely upon the construction of the terms of the grant. *Highway 7 Embers, Inc. v. Northwestern National Bank,* 256 N.W.2d 271, 275 (Minn.1977). The extent of an easement should not be enlarged by legal construction beyond the objects originally contemplated or expressly agreed upon by the parties. *Minneapolis Athletic Club v. Cohler,* 287 Minn. 254, 258, 177 N.W.2d 786, 789–90 (1970). The court has the equitable power to determine the fair extent of an easement when the parties are unable to agree. *Ingelson v. Olson,* 199 Minn. 422, 429, 272 N.W. 270, 274 (1937).

The crux of appellant's contention is the indefinite location of the easement caused by the Nyhuses' delay in exercising their reserved right to locate the new road. She relies upon *Ingelson,* which determined the rules governing the location of easements where the description is indefinite as follows:

> [T]he grantor has the right in the first instance to designate and locate the roadway, and, if reasonably suitable for the purpose, a selection of a place cannot be questioned.

> If the grantor omits to exercise this right, the grantee may make the selection and his selection will be upheld unless he has abused the right.

*Ingelson,* 199 Minn. at 428, 272 N.W.2d at 274 (citations omitted). Further, the Minnesota Supreme Court has held:

> Where a way is granted without fixing its location, but there is a way already located at the time of the grant, such way will be held to be the location of the way granted *unless a contrary intention appears.*

*Miller v. Snedeker,* 257 Minn. 204, 215, 101 N.W.2d 213, 222 (1960) (emphasis added). Because of the eight-year delay in designating the roadway and because of its existence and use at the time of the grant, appellant thus claims the easement was both selected and fixed at the original roadway.

The trial court ruled, however, that a "contrary intent" as defined in *Miller* existed to use the original roadway temporarily until the right to lay out the new roadway was exercised. The Nyhuses did not lay out the new roadway until they sold the property over which the original roadway was located. While all the other deeds granted the right of access to Highway 108, respondents' deed granted no easement on their behalf and did not burden their land with any servitude. Most of the lot owners used the new roadway after it was constructed. Most importantly, in 1961 appellant's husband purchased two lots and resold them in 1965 with both deeds granting the right of access on a road to be laid out in the future. Thus, the trial court found that all parties were aware that the original roadway was only a temporary access route, and that the Nyhuses did not default on their right to fix the easement's location. The trial court was not clearly erroneous in finding the original roadway was only intended as a temporary route and that the Nyhuses retained the right to locate the new roadway.

In addition, this is not an indefinite grant per se, where the Nyhuses in vague terms covenanted to allow "passage over their land," but is a grant of an easement specifically retaining and reserving the right to locate the easement in the future. Minnesota has yet to rule upon the right to

designate the future location of an easement under these circumstances.

In *West v. H.J. Lewis Oyster Co.*, 99 Conn. 55, 121 A. 462 (1923), the grantor similarly granted the plaintiff an easement to cross the subject property at a location to be designated in the future. The defendant in *West* also claimed that the use of the way at the time of the grant controlled and they had the right to designate the location. The *West* court agreed the defendant's argument would have merit if the grant had been of an unlocated right of way. However, the court held:

> Here we have no general grant of a right of way as existent, or in any way described or indicated; the provision in the deed clearly contemplates a designation in the future, and a designation, not by agreement of the parties, but by the act of [the grantor]. Some meaning must be given the words of the grant * * * and the trial court evidently construed the words to mean that [the grantor] is intended to retain the right and power to locate the way till some time later than the execution of the deed.

*West*, 99 Conn. at 63, 121 A. at 465. Based upon the *West* rationale, the record supports the finding that the original roadway had not become the fixed easement location and that the Nyhuses retained the right to lay out the new roadway in 1966.

■■■ 2. To establish an easement by prescription, a person must, for fifteen years, use the land in a manner which is hostile, adverse, under a claim of right, and in a fashion that is actual, open, continuous and exclusive. *Burns v. Plachecki*, 301 Minn. 445, 448, 223 N.W.2d 133, 135–36 (1974); Minn.Stat. § 541.02 (1986). The parties apparently concede use was open, continuous and exclusive, but dispute whether use was hostile, adverse or under a claim of right.

A presumption arises that use of land was under a claim of right adverse to the owner's interest where the claimant of an easement by prescription has shown open, visible, continuous and unmolested use for the statutory period, inconsistent with the rights of the owner of the servient estate and under circumstances from which his knowledge and acquiescence may be inferred. *Hildebrandt v. Hagen*, 228 Minn. 353, 357, 38 N.W.2d 815, 818 (1949). The burden of rebutting this presumption subsequently shifts to respondent to demonstrate that the use was permissive. *Hartman v. Blanding's, Inc.*, 288 Minn. 415, 421, 181 N.W.2d 466, 469 (1970).

Although appellant used the original roadway and respondents' driveway openly for a significant amount of time, thus shifting the burden of proof to respondents, the trial court found appellant's use of the roadway was permissive. Both respondents testified that appellant's husband asked permission to use the new driveway on numerous occasions, and both appellant and her husband deny such conversations. Further, respondents demonstrated that the Nyhuses gave appellant permission to clear a roadway over their land to reach the original roadway. While appellant claims the conflicting evidence presented was insufficient to demonstrate permissive use, it is the trial court's province to resolve conflicts in testimony and evaluate the credibility of witnesses. *Pickar v. Erickson*, 382 N.W.2d 536, 538 (Minn.Ct.App. 1986). The finding of permissive use is sufficient to rebut the presumption of a claim of right to use the driveway.

■■■ 3. Appellant also claims a right to use the new driveway because she held an irrevocable license. She claims the license to use the driveway became irrevocable when respondents accepted the $1,800 contribution to pave the driveway and the $515 for maintenance.

Generally, a license is revocable at the will of the licensor. *Minneapolis Mill Co. v. Minneapolis & St. Louis Ry. Co.*, 51 Minn. 304, 313, 53 N.W. 639, 641 (1892). A license remains revocable even if granted for valuable consideration, and the mere fact that the licensor permitted the licensee to expend large sums of money in building or improving the land does not justify an estoppel. *Id.* A licensee is conclusively presumed, as a matter of law, to know that a license is revocable at the licensor's pleasure; and if the licensee expends money in

connection with his entry upon the licensor's land, he does so at his own peril. *Id.*

Despite the strong language of *Minneapolis Mill*, appellant asserts that the court has the power to interfere with the license to use the driveway under the doctrine of equitable estoppel. In *Munsch v. Stetler*, 109 Minn. 403, 124 N.W. 14 (1910), appellant and respondent orally agreed to construct a drainage ditch running over each party's land. After they split the cost of ditch construction and commenced to drain the land, appellants dammed the ditch in a manner benefiting their land, but interfering with the drainage of respondent's land. The court recognized that ordinarily a licensor may stand by and witness expenditure of money benefiting the land. *Id.* at 406, 124 N.W. at 15. However, the court found appellant's action warranted the exercise of equitable discretion because they not only permitted respondent to enter the land and build the ditch, but also joined in the enterprise and accepted the benefits of respondent's labor and expense. *Id.* The court interfered with the license because respondent was deprived of all benefits from the ditch construction while appellant fraudulently retained it for his personal use. *Id.* at 406–07, 124 N.W. at 15.

While appellant expended money on the new driveway and subsequently was deprived of its benefits, the equities do not warrant estoppel. In *Munsch,* the estoppel theory was based upon an oral agreement which bound the parties to construct and maintain the ditch. The court thus held it would operate as a fraud to fail to enforce the agreement since the ditch was dammed only two years after construction. *Id.* Here, the equities are less severe since there was no binding oral agreement. In fact, the trial court found appellant volunteered to contribute to the cost of paving and maintenance, and subsequently used the driveway for at least ten years. Coupled with the trial court's finding of permissive use, the equities are not severe enough to interfere with the license.

4. Finally, appellant claims the trial court's findings are not supported by the evidence. The trial court will be upheld if there is sufficient evidence in the record which, if believed, would reasonably support its decision. *Peterson v. Johnston,* 254 N.W.2d 360, 362 (Minn.1977). When a trial court sits without a jury, its findings of fact will not be set aside unless clearly erroneous, and deference is given to the trial court's opportunity to judge witness credibility. *Wheeler v. Newman,* 394 N.W.2d 620, 622 (Minn.Ct.App.1986); Minn. R.Civ.P. 52.01. The testimony of the parties and documents introduced at trial provide reasonable support for the findings related to designation of the roadway pursuant to the deeds and the adequacy of access to the lakeshore lots via the new roadway. The trial court's findings were not clearly erroneous.

## DECISION

The evidence sustains the trial court's findings that appellant held no easement or irrevocable license entitling her to use the driveway across respondents' land.

Affirmed.