SHEPPARD, Respondent, vs. ROSENKRANS, Appellant.

*January 11 — February 1, 1901.*

(1, 2) *Landlord and tenant: Privilege of extending term: Statute of frauds: Notice: Waiver.* (3, 4) *Instructions to jury: Special verdict: Appeal: Exceptions.*

1. A lease for a certain term. "with the privilege of four years more . . . by giving ninety days' notice" before the expiration of the original term, is an unconditional lease for the first period and a

Sheppard vs. Rosenkrans.

conditional lease for the four years thereafter, and if the notice is. given the lessee holds for the additional term under the original lease and not under the notice. The notice is therefore not within the statute of frauds of Illinois (sec. 2, ch. 59, Starr & C. Ann. Stats. Ill. 1896), and may be given by an agent having no written authority.

2. In such a case acceptance of a notice not seasonably given, and action thereon without objection, constitute a waiver of the condition as to the time of giving the notice.

3. It is error for the trial court to state to the jury the legal effect of their answer to a question in the special verdict.

4. An omnibus exception to an instruction to the jury which includes. several distinct propositions, some of which are correct, is insufficient to present the question as to the correctness of any one of the propositions singly.

APPEAL from a judgment of the circuit court for Milwaukee county: D. H. JOHNSON, Circuit Judge. *Affirmed.*

This is an action to recover certain instalments of rent. under a written lease. The action was tried by a jury, and it appeared, among other things, upon the trial, that on the 25th of September, 1894, one Jacob Weil, of Chicago, Illinois, and the defendant, *O. L. Rosenkrans*, entered into a. written lease, which was signed and sealed by both of them, by the terms of which Weil leased to *Rosenkrans* room No. 206 in a building known as the " Garden City Block," in the city of Chicago, Illinois, "from the first day of October, 1894, to the 30th day of April, 1896, with the privilege of four years more at the rate of $40.00 per month for the first year, and $50.00 per month for the remaining three years, by giving ninety days' notice before the 1st day of May, 1896, for the sum of seven · hundred and sixty dollars, payable in monthly instalments of forty dollars in advance on the first. day of each and every month during the term of this lease,. at the office of Jacob Weil & Co., in Chicago, Ill."

The defendant, *Rosenkrans,* went into possession of the premises, and used the same for the transaction of a jewelry business, and paid the rent in monthly instalments, as pro-

vided by the terms of the lease.  On the 1st day of March, 1896, it appears that a corporation called the Weber Jewelry Company succeeded to the business of *Mr. Rosenkrans*, and occupied the premises until the 1st day of August, 1897. *Mr. Rosenkrans* seems to have been the manager of the business of the Weber Jewelry Company, and largely interested therein, and kept the bank account thereof in his own name.  The Weber Jewelry Company paid rent for the premises at $40 per month up to the 1st day of May, 1897, and at $50 per month for the months of May, June, and July, 1897.  On the 3d of March, 1896, the following written notice was delivered by one J. H. Weber to Joseph S. Meyers, at Chicago, Illinois, who was a member of the firm of Jacob Weil & Co., and was the agent of Mr. Weil in this transaction: "Chicago, March 3d, 1896.  *Jacob Weil, Esq.*  Dear Sir: This is to notify you that I will continue the lease of room 206 in Garden City Block as per stipulation in said lease. Yours very truly, *O. L. Rosenkrans*, by J. H. Weber."  J. H. Weber was a member of the corporation known as the Weber Jewelry Company, and was the cashier and general clerk thereof, and testified that he gave this notice by direction and authority of *Mr. Rosenkrans;* but the defendant denied that he had authorized the giving of any such notice.  On the 28th day of May, 1897, Jacob Weil assigned the lease in question to the plaintiff, *R. D. Sheppard*, by written assignment indorsed upon the lease as follows: "In consideration of one dollar to me in hand paid, I hereby transfer, assign, and set over to *R. D. Sheppard* and assigns my interest in the within lease, and the rent thereby secured.  Witness my hand and seal this 28th day of May, 1897.  Jacob Weil. [Seal.]"  Jacob Weil died December 17, 1897.

The following special verdict was rendered by the jury: "(1) Did Jacob Weil, then in his lifetime, but since deceased, and the defendant, *O. L. Rosenkrans*, make and enter into the lease in evidence, dated September 25, 1894?  (By direc-

tion of the court.)  They did.  (2) Did the defendant during the ninety days prior to May 1, 1896, to wit, on the 3d day of March, 1896, serve or cause to be served upon the agent of the then owner of the demised premises a notice that he, the defendant, would continue in the possession of said premises under said lease and the provision therein for the renewal thereof, four years after the expiration of the original lease, to wit, April 30, 1896?  Yes.  (3) Was the said lease duly assigned by the lessor, Jacob Weil, then in his lifetime, but since deceased, to the plaintiff in this action, *Robert D. Sheppard*, May 28, 1897?  Yes.  (4) Did the defendant vacate said premises July 31, 1897?  Yes.  (5) Did the plaintiff obtain a new tenant for said premises May 1, 1898?  Yes.  (6) Before obtaining said tenant, did the plaintiff use reasonable diligence to rent the said premises for the best price that could be obtained?  Yes.  (7) Were said premises vacant during nine months?  Yes.  (7½) After the alleged renewal of the lease, down to the time when said premises were vacated, did the defendant occupy said premises under said lease, or were said premises occupied by the Weber Jewelry Company under some arrangement or bargain made by them with Jacob Weil, since deceased?  *O. L. Rosenkrans* occupied premises under said lease.  (8) Did the new tenant for said premises pay to the plaintiff rent for said premises at the rate of $35 per month from his entry therein down to the time of the commencement of this suit, January 3, 1899, and was $35 a month the highest rent that the plaintiff could obtain therefor?  Yes.  (9) If the court should be of the opinion that the plaintiff is entitled to judgment, in what sum do you assess his damages? $616.52."

Judgment for the plaintiff was rendered upon the verdict, and the defendant appeals.

For the appellant there were briefs by *Blatchley & Burke*, and oral argument by *A. H. Blatchley*.

For the respondent there was a brief by *O'Connor, Hammel & Schmitz*, and oral argument by *Leopold Hammel.* They argued, among other things, that when a tenant, by the terms of a lease, has an option or privilege to remain for a longer period, such additional term is not a new demise, but a continuation of the old one. It is extended by the provisions of the covenant contained in the lease itself, and becomes a lease for the additional term. *Kramer v. Cook*, 7 Gray, 550; *Delashman v. Berry*, 20 Mich. 292, 298; *Insurance & Law B. Co. v. Nat. Bank of Mo.* 71 Mo. 60; *Orton v. Noonan*, 27 Wis. 272; *Noonan v. Orton*, 27 Wis. 300; *Kimball v. Cross*, 136 Mass. 300; *Ranlet v. Cook*, 44 N. H. 512; *Clarke v. Merrill*, 51 N. H. 415; *Brown v. Parsons*, 22 Mich. 24.

WINSLOW, J.   The lease in question was an Illinois contract, and the appellant's main contentions are based upon the provisions of that part of the statute of frauds of Illinois relating to contracts concerning lands or interests therein which reads as follows: "No action shall be brought to charge any person upon any contract for the sale of lands, tenements or hereditaments, or any interest in or concerning them, for a longer term than one year, unless such contract or some memorandum or note thereof shall be in writing and signed by the party to be charged therewith or some person thereunto by him lawfully authorized in writing signed by such party." Sec. 2, ch. 59, Starr & C. Ann. Stats. Ill. 1896.

The appellant's argument is that the occupation of the premises after April 30, 1896, must be a holding under the notice of election to hold for the additional term, and that such notice having been given by an agent whose authority, if any, was not in writing signed by *Rosenkrans*, it follows that the notice was inadmissible in evidence, and ineffective even if admitted. The conclusive answer to this conten-

tion, as well as to the minor contentions founded on the statute referred to, is that, if the option provided for in the lease was exercised, the lease became a lease for both the original and the extended terms, and hence the holding was under the original lease and not under the notice. As said in 1 McAdam, Landlord & T. (3d ed.), 160: ":A lease for one year, or three additional years if the lessee elect, is of itself a lease for four years if the lessee elect to continue it beyond the first year. This is so because, if the tenant makes the election, he still holds under the original demise; there is no further act to be done by the lessor."

The stipulation was not to "renew" or "extend" the lease, which stipulation would require the making of a new lease (*Kollock v. Scribner*, 98 Wis. 104), but it was a stipulation that by the giving of a certain notice the lease itself should cover an additional four years. It was an unconditional lease for the period expiring April 30, 1896, and a conditional lease for four years thereafter. The condition was the giving of a certain notice by the lessee, but it might just as well have been the happening of an event over which neither party had control, such as the death of a person or the falling of a tree. When such required event happened, the condition was satisfied, and the lease became a lease for the additional period by its own terms. The act of the lessee in giving the notice was not the making of an agreement, but the performance of a condition upon which the previously made agreement depended. So the statute referred to does not apply to the notice of the exercise of the option or privilege, and the authority of the agent to make it is not required to be in writing.

But it is said that the notice was not given ninety days before the 30th day of April, 1896, and hence that the condition never was in fact performed. This objection, however, is met by the fact that the notice was given and accepted without objection on the score of time. There are

Sheppard vs. Rosenkrans.

few cases where the time within which an act is required to be done may not be waived by the parties where the rights of others are not affected, and the facts in the present case show an undoubted waiver by acceptance and action upon the notice without objection.

An exception to a portion of the charge requires notice. In charging the jury upon interrogatory 7½, the trial judge gave an instruction covering nearly a page and a half of the printed case. The first part of the instruction, nearly a page in length, was substantially a correct statement of the considerations which the jury might take into account in answering the question. Then followed, however, this clause: "Although it is not my duty to tell you the effect of your answer, I may state that, if you answer that it was occupied by the Weber Jewelry Company under an arrangement or bargain made with Mr. Weil, it will relieve *Mr. Rosenkrans* of any liability, because the occupation which continued after the renewal of this lease was all paid for." The defendant excepted to the entire instruction. The court undoubtedly committed error in stating to the jury the legal effect of their answer to the question upon the rights of the parties, under numerous recent decisions of this court; and, had exception been taken specifically to this part of the charge, we should feel obliged to reverse the case. The rule is familiar, however, that an omnibus exception which includes two or more distinct propositions, some of which are correct, is insufficient to present the question as to the correctness of any one of the propositions singly, and under this rule we cannot consider the exception.

Other minor errors are assigned, but we find no merit in them, and they do not require specific treatment.

*By the Court.*— Judgment affirmed.