STREET-WHITTINGTON CO. v. SAYRES.
(No. 705.)

(Court of Civil Appeals of Texas. Amarillo. Jan. 9, 1915.)

1. FRAUDS, STATUTE OF (§ 53*) — PERFORMANCE IN A YEAR—LEASE.

A verbal lease for a term not longer than one year, to commence in the future, is valid.

[Ed. Note.—For other cases, see Frauds, Statute of, Cent. Dig. §§ 69, 80, 92; Dec. Dig. § 53.*]

2. FRAUDS, STATUTE OF (§ 146*) — LEASE — PLEADING.

An allegation that defendant orally agreed to take the premises for at least one year, beginning January 1, 1914, and continuing to January 1, 1915, does not allege an oral lease for a period longer than one year.

[Ed. Note.—For other cases, see Frauds, Statute of, Cent. Dig. §§ 352, 355–357; Dec. Dig. § 146.*]

3. LANDLORD AND TENANT (§ 86*)—CONSTRUCTION OF LEASE—OPTION FOR RENEWAL.

A clause in a lease, providing that the tenant at the end of the term shall have the refusal of the property for 12 months longer, gives an option for a renewal of the lease on the same terms.

[Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. §§ 270–275; Dec. Dig. § 86.*]

4. LANDLORD AND TENANT (§ 90*)—CONSTRUCTION OF LEASE — OPTION — QUESTION FOR COURT.

Where there was evidence that the tenant, before the expiration of his term, notified the landlord that he elected not to take the premises for another year, the court could not say, as a matter of law, that a holding over by the tenant for half a month was an election by him to take a renewal of the lease.

[Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. §§ 284–289; Dec. Dig. § 90.*]

5. LANDLORD AND TENANT (§ 86*)—CONSTRUCTION OF LEASE—OPTION FOR RENEWAL.

Such a clause gives an option for a renewal of the lease, not a mere extension of the lease for an additional term.

[Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. §§ 270–275; Dec. Dig. § 86.*]

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key-No. Series & Rep'r Indexes

**6. LANDLORD AND TENANT (§ 90*)—OPTION FOR RENEWAL—EVIDENCE.**

A holding over by a tenant who has an option for a renewal under such a clause, even if presumptive evidence of an election to exercise his option, is not conclusive.

[Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. §§ 284–289; Dec. Dig. § 90.*]

**7. LANDLORD AND TENANT (§ 230*)—ACTIONS FOR RENT—PLEADINGS—TERMS OF LEASE.**

Where a lessor, in an action for rent for the year after the expiration of the term, did not plead an election by the tenant to take a renewal of the lease, under an option given him, it was error to instruct a verdict for the lessor on that ground.

[Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. §§ 904–925; Dec. Dig. § 230.*]

**8. LANDLORD AND TENANT (§ 90*)—PERIODICAL TENANCY—HOLDING OVER.**

Where a tenant held over after the expiration of his term, but after notifying his landlord that he intended to move as soon as another building was ready, and the landlord made no objection, but attempted to collect double the rent reserved by the lease, no agreement that the tenant should hold over for another term under the same lease could be implied.

[Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. §§ 284–289; Dec. Dig. § 90.*]

**9. LANDLORD AND TENANT (§ 118*)—"TENANCY AT WILL"—HOLDING OVER BY PERMISSION.**

A "tenancy at will," or periodical tenancy, may arise when the tenant holds over with permission of a lessor or with his tacit consent.

[Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. §§ 402–415; Dec. Dig. § 118.*

For other definitions, see Words and Phrases, First and Second Series, Tenant at Will.]

**10. LANDLORD AND TENANT (§ 90*)—TENANCIES FROM YEAR TO YEAR—TENANT HOLDING OVER.**

Where a tenant under a lease for eight months held over after the expiration of the term, the implied lease will not be for a full year, but only for eight months additional.

[Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. §§ 284–289; Dec. Dig. § 90.*]

**11. LANDLORD AND TENANT (§ 90*)—RENEWAL OF LEASE—HOLDING OVER.**

Where a landlord, though not expressly consenting thereto, by her words and conduct induced a tenant to believe that she consented to his remaining after the expiration of his term until another building was ready for him, she could not thereafter hold him on an implied contract for an additional term by reason of such holding over.

[Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. §§ 284–289; Dec. Dig. § 90.*]

Appeal from District Court, Cottle County; Jo. A. P. Dickson, Judge.

Action by Mrs. F. P. Sayres against the Street-Whittington Company. Judgment for the plaintiff, and defendant appeals. Reversed and remanded.

Jas. M. Whatley, of Paducah, and G. E. Hamilton, of Matador, for appellant. Browne & Hawkins, of Paducah, for appellee.

HUFF, C. J. Mrs. F. P. Sayres, appellee, sued the Street-Whittington Company, appellant, upon a breach of a rental contract, for damages in the sum of $580. The trial court instructed a verdict for the appellee in the sum of $580. The appellee alleged that she and appellant entered into a written rental contract on the 12th day of May, 1913, for a certain store building, for the term of eight months, beginning May 1, 1913, and continuing up to January 1, 1914; that it was agreed thereby that appellant should pay $100 per month during the term, and under such contract appellant took possession of and used the building, etc.; that thereafter, about July 15, 1913, appellant orally contracted and agreed with appellee that if she would put in certain shelving and improvements in the building, desired by it, it would—

"take the building for at least one year, beginning from the 1st day of January, 1914, the date the contract above set out should expire, and continuing to the 1st day of January, 1915, at the said price of $100 per month, to be payable monthly on the last of each month, as was also provided in the former contract."

She further alleged that, being desirous of keeping the storehouse occupied, she agreed to place the improvements required in the building, on the condition that appellant would rent the building for the ensuing year of 1914; that she did, in accordance with her agreement, put in the shelving and improvements at a cost to her of about $400, and further alleged, in paragraph 3:

"Plaintiff will further show to the court that the defendant continued to use, occupy, and enjoy the said building under said written contract and lease up to and until the 15th day of January, 1914, when, without cause or excuse, the said defendant removed from her said building and abandoned same and refused to comply with the rental contract as above set out."

The appellant, by answer, admitted having entered into a contract in writing up to January 1, 1914, as alleged by appellee, but denies having entered into an oral contract for the lease of the property for the year 1914, as alleged by the appellee; and—

"in answer to paragraph 3 of plaintiff's petition, defendant says it is true it remained in said building until about the 15th day of January, 1914, but further says that it was expressly stipulated, agreed, and understood that it was not to remain in same longer, and did so remain for that length of time until the building it had rented from Craven for 1914 could be vacated by C. E. Jones, who occupied same during the year 1913; that defendant notified plaintiff about the middle of December, 1913, that it would not want to lease said building for the year 1914, and would vacate same just as soon as Jones vacated the Craven building, and did never at any time agree to rent same for the year 1914, but expressly stated to plaintiff that it would not rent same for the year 1914."

The testimony of appellee and appellant is conflicting on the issue as to whether there was an oral agreement entered into to the effect that appellant would take the building

for the year 1914 in consideration that appellee would put in the improvements alleged. The appellee testifies such was the agreement, and that she made the improvements. The manager of appellant testified that it refused to make the written contract for eight months in 1913, until appellee agreed to put the improvements in the building, and the effect of appellant's evidence is that the improvements were the consideration for the written contract set out by appellee, and that there was no agreement whatever to take the building for the year 1914. The trial court on this issue, under the evidence, was not warranted in instructing a verdict for appellee on the ground that the oral contract was conclusively proven. Evidently the trial court so instructed the verdict on the fact that appellant, as the tenant of appellee, held over the premises after the expiration of the term under the written lease. It is admitted in the pleadings, and the fact is uncontroverted, that the written lease expired January 1, 1914, and that appellant remained in possession of the premises until January 15, 1914. The written lease in this case stipulates that appellee leased to appellant the premises "for the term of eight months, beginning on the first day of May, 1913, and expiring on the first day of January, 1914. * * * At the end of this contract party of the second part (appellant) shall have the refusal of same property for twelve months longer." The appellant agreed to pay for such lease "the sum of $800.00 and no/100 dollars, at Paducah, Texas, as follows: $100.00 on the first day of June, July, August, September, October, November and December, each respectively, 1913; and $100.00 on January 1, 1914." The facts in this case show that the appellant, before the expiration of the term of the written lease, rented another building from a Mr. Craven, in which to move its goods. The appellant notified appellee that they would not want the building for 1914, and that they had rented another building. For the purpose of discussing the other questions involved in this case we make the following quotations from the record: Whittington, the appellant's manager, testified:

"Mrs. Sayres never did claim at any time before I vacated the building that she had a contract with me that bound me to keep the building for 1914. The first time I heard of any such claim on her part was when they served the subpœna on me in this case. Along about the first days of December, some time just after the 1st of December, Mrs. Sayres came in the store and called for me one day. I went down and she asked me if I wanted to renew the contract for another year. I told her no. She asked me if I wanted the building for another year. I told her I did not know whether I wanted it or not for sure, that Mr. Street would be over here in a few days—he is one of our concern—he is president of the company and lives in Graham. I told her I was looking for Mr. Street. We were figuring on some other propositions, and I would not make a contract until he came over. She said she would like to renew the contract. I told her one thing I knew I wanted; if we stayed there would be cheaper rent, and she answered me by saying she did not want to rent it cheaper if she could help it, and I told her I did not want to pay the price if I could help it. I called her up immediately after we closed the deal for another building. I do not remember the exact date, but it was somewhere between the 15th and 20th of December, not later than the 20th. It was between those dates. Mr. Street had been here, and I called Mrs. Sayres and told her that we had made a deal for another building and would not want her building for another year. We would vacate the building about January 1st. She did not, at that time, claim to me that she already had it rented to me for the year 1914. She made no protest at all. The first time I saw her with reference to the building was about the 3d of January. On the 3d of January, I think she came in the store and asked me if I wanted the building during the month of January, and I told her I would not want it all the month—that I wanted it for a few days until I could move, and that Mr. Jones was vacating the building we were to occupy that day. As soon as I could have some shelves arranged in his store we would move out. She said that the reason she wanted to know was that she had the building rented to a party for $200 a month that wanted it on the 1st of January. Inasmuch as I could not give possession of the building at that time, she would expect me to pay $200. I told her I would not pay it, and she walked out. I paid her $50 for the half of the month of January that I occupied the building. I left it at the First State Bank in a check, just the same as I had instructions to leave all the rent. About the 1st of February, it might have been a day or so after the 1st, I got a statement one day by mail, 'Rent for the month of January, $100.00,' and I wrote her a note and explained that I had left her rent at the bank, so the next day I called her and asked her if she got my note, and she said she had not, and I told her I called to explain to her that I left her $50 rent to the 15th of January at the First State Bank, and she said she did not know I had done that, and I told her I had and asked her if it was satisfactory, and she says: 'I will see about it.' That is the last conversation I ever had with her concerning this rent."

Miss Bertha Winton testified that she heard the conversation between Whittington and Mrs. Sayres early in January, in which Mrs. Sayres told him that she had rented the building to another party for $200 a month.

Mrs. Sayres testified that she went to Whittington and told him that she heard that appellant was going to move out of the building, and wanted to know what he meant by it, and he said that he did not know whether he was going to stay, that he could not pay as much rent as they had been paying, and she stated she could not let him have it for any less, and that Whittington did not notify her that they would not want the building for 1914 until about the 25th or 26th of December, 1913, and that he then told her he would not want the building, that he was going to move out, and said he would be out by the 1st, and did not say about the 1st.

Mrs. Sayres further testified that she had told Mr. Whatley that she could rent the building for $200 if she had it on the 1st of January; that she thought she could get a party in it, but she did not then have any.

This $200 party was through a second party, she says, and that she spoke to them to see the party.

"Mr. McAdams was going to get another party. He thought they would pay $200. He had told me about it. He was in the hardware business. I told Mr. McAdams about it after I found out the building was left on my hands. I did not tell Mr. Whatley that I had a written contract with Street-Whittington."

[1, 2] The appellant's first assignment is to the action of the court in overruling appellant's first exception to the petition. The proposition presented is to the effect that a contract for the lease of real estate for a longer term than one year is void unless in writing. It was held by our Supreme Court that a lease for a term not longer than one year may be made to commence in the future by a verbal contract. Bateman v. Maddox, 86 Tex. 546, 26 S. W. 51. The particular allegation referring to the oral contract to which appellant urges the exception is that the term was to be "at least one year." It will be noted from our statement of the pleadings that this phrase is immediately followed by an allegation of the term which was to begin January 1, 1914, and continue to January 1, 1915. The court properly overruled the exception.

We shall not set out the various assignments assailing the action of the court in peremptorily instructing a verdict for the appellee, but give our views of the case as presented by the record in this case. As we gather from the brief of appellee, the fact that appellant held over the premises until January 15, 1914, it is contended is sufficient to conclusively prove that it had exercised its option which the contract gave it to take the property for another year.

[3] The clause, "at the end of this contract, party of the second part shall have refusal of same property for twelve months longer," is construed by us to be an option given to the tenant for a renewal of the lease of the premises for the twelve months on the same terms and rental as given by the contract at appellant's election. If not so construed, the clause would be ineffectual for any purpose. The rent for which the premises should be had for the 12 months succeeding the end of the term stipulated in the contract is not specifically named, and a contract to be renewed upon such terms as might be agreed upon would be uncertain, and for that reason unenforceable. Whatever ambiguity there may be in the words of the covenant, the intention of the parties to be collected from them, considered in connection with the whole instrument, obviously was that appellant, at its election, should have a renewal of the premises for one year, to commence at the expiration of the existing lease, for the same rent as the former, payable monthly. Tracy v. Albany, 7 N. Y. 472, 57 Am. Dec. 538.

[4] In this case it appears that appellant had elected not to take the premises for the next succeeding 12 months, and had so notified appellee before the end of the term. In the condition of the record we do not believe the trial court authorized to assume that, because there was a holding over after the end of the term, it conclusively appeared appellant had elected to retain the premises under the covenants for renewal. If the evidence does not conclusively show that appellant had not made such an election, it at least was sufficient to raise the issue, which should have been presented to the jury for their finding. As suggested, the written contract had in it a covenant to renew the lease at the option of the tenant.

[5] We are inclined to interpret this clause as requiring a new lease, and not a mere extension for an additional term. This is clearly the interpretation of a clause almost exactly like the one in question in the case of Tracy v. Albany, supra, and similar to the clause in the case of Grant v. Collins, 157 Ky. 36, 162 S. W. 539. Whether this is true or not, however, the weight of authority appears to be:

"Where a lease provides that the tenant may have, at his option, an extension for a specified time after the expiration of the term agreed upon in the lease, or may occupy for an extended term, including the term specified, the mere holding over after the expiration of the specified term will constitute an election to hold for the additional or extended term, and the tenant, after holding over beyond the first term without any new arrangement, is bound for the additional or extended term as fully and completely as though that term had been originally included in the lease when executed."

So, also, it has been said:

"A mere holding over and payment of rent had been held sufficient evidence of an election to renew, as distinguished from an election to extend, to justify the landlord in holding the tenant for the additional term."

Note to Kuhlman v. Lemp, etc., 29 L. R. A. (N. S.) 174.

Some courts make a distinction between extension and renewal, which difference is stated by the text-writers, and some of which are quoted in Grant v. Collins, supra; Taylor on Landlord & Tenant, § 332; Wood on Landlord & Tenant, § 416. Also see Tiffany on Landlord & Tenant, vol. 2, p. 1514, §§ 218–223; Andrews v. Marshall, etc., 118 Iowa, 595, 92 N. W. 706, 60 L. R. A. 399, 96 Am. St. Rep. 412.

[6] In this case the contract being one for renewal for the term specified, the law will require proof of an agreement for such renewal, and whether holding over alone would be sufficient evidence, or a presumption of such an agreement, it is nevertheless not a conclusive presumption, but may be rebutted. If the facts show that such holding over was not intended by the parties to renew the lease, then appellee would not be entitled to recover for the full term specified in the option. Even if the contract shall be held

a mere extension of the lease, some courts hold the holding over—

"is a piece of evidence—a strong piece of evidence—a piece of evidence sufficient of itself, if unexplained and uncontrolled, to raise a fair inference and presumption that the option has been exercised, and thus to make out a prima facie case. But this is the most that can be said of it, and it is still competent for the tenant to offer opposing evidence." Atlantic National Bank v. Demmon, 139 Mass. 420, 1 N. E. 833.

In Racke v. Anheuser, etc., 17 Tex. Civ. App. 167, 42 S. W. 774, there was an option given for two years, and notice by the tenant that it would not lease for the additional term of two years. It appeared that the option was not intended to be exercised to take further lease. It was there held the option would not be part of the lease, and that the holding over created only a tenancy for one year. It should be noted in that case the question of holding over and liability thereunder for one year's lease was treated by the court as res adjudicata, and the law with reference to that question was not discussed. We think that case is conclusive of the question here, even though appellant held over, yet it did not do so under the terms of the option, but if liable, it is so under the general rule with reference to holding over by a tenant after the expiration of his lease. Williams v. Houston, etc., 46 Tex. Civ. App. 70, 101 S. W. 839, 1195. If the trial court instructed a verdict upon the theory that the holding over was an election to take the premises under the option, then we think in the light of the testimony in this record he was in error.

[7] The appellee did not set up in her pleadings the clause giving the option and assert an election thereunder by appellant, and for that reason a verdict on this clause would not be authorized.

[8] On the question of appellant's liability for one year's rent, by reason of holding over under the rules of law governing such cases, independent of the option, we have concluded under the facts the court should have submitted that issue to the jury. The leading case in this state on the question is the City of San Antonio v. French, 80 Tex. 575, 16 S. W. 440, 26 Am. St. Rep. 763. The Supreme Court quotes several authorities, and among which is an English author, and as follows:

"But, * * * at the end of the lease, if the tenant holds over, he holds as a tenant at sufferance, still if, when the period for the payment of rent becomes due, he pay the landlord the rent reserved by the expired lease, he becomes a tenant from year to year; the payment of such rent by him, and the receipt of it by his landlord, being considered indicative of their mutual intention to create a yearly tenancy."

The court also quotes from Dorill v. Stephens, 4 McCord (S. C.) 59, as follows:

"When a tenant holds over after the expiration of the lease, with the tacit consent of the landlord, the law implies an agreement on the part of the landlord that he will let, and on the part of the tenant that he will hold, on the terms of the expired lease, * * * thus substituting

the contract with respect to the term which is passed for that which is to come, not merely in form, but in its effect and substance."

Can it be said in this case that there was a tacit consent of either the landlord or tenant to so continue? The tenant asserted he would not take the property for one year, and that he had rented another place and notified the landlord it would leave so soon as the other was ready, stating it desired to occupy the house until such time. The landlord did not object or protest and thereafter demanded $200 for the month of January—a different rent to that provided for in the original contract. If these facts are true, how can it be said the terms of the past contract were substituted for that which is to come by either the landlord or tenant? Upon what can the law imply such intent? The general rule is stated to be that the option is with the landlord to treat the hold-over either as a tenant or as a trespasser, and that the purpose or desire of the tenant is not to be considered in determining the question. This is not the universal rule, but it is sustained by a decided weight of authority in America. Some courts have rigorously enforced the rule, as for instance where the tenant held over for but a day or so, or was unable to leave on account of sickness or the like; others have been more liberal.

"In England and in one, if not more, of the states of this country, the courts have not recognized an option in the landlord thus to hold the tenant for another period merely because he wrongfully obtains possession during a part of that period, they applying in this case, as in others, the rule that a tenancy can be created only by the consent of the parties thereto." Tiffany on Landlord & Tenant, vol. 2, p. 1471, § 209; American & Eng. Enc. of Law, vol. 18, p. 407 (2).

[9] If a tenant holds over for some purpose by permission of the landlord, he will be liable only for the period occupied. A tenancy at will or periodical tenancy may arise when the tenant holds over with the permission of the lessor. American & Eng. Ency. of Law, 407 (3); Tiffany on Landlord & Tenant, vol. 2, p. 1470, §§ 208, 209. Where the tenant remains over with the tacit consent of the landlord for a purpose known to the landlord at the time, such as negotiating for a new lease or under agreement to make improvements or the like, he will not be held liable as a hold-over. Abeel v. McDonnell, 39 Tex. Civ. App. 453, 87 S. W. 1066; Williams v. Houston, etc., 46 Tex. Civ. App. 70, 101 S. W. 839, 1195; Minor v. Kilgore, 38 S. W. 539; Leggett v. Louisiana, etc., 157 Mo. App. 108, 137 S. W. 893, and note to Turner v. Wilcox, 40 L. R. A. (N. S.) 498. In the case of Shipman v. Mitchell, 64 Tex. 174, the Supreme Court held if notice was given to the tenant by the landlord that after the expiration of the term he would be permitted to hold from month to month, such notice would rebut an implied contract to hold under the old lease. The tenant would be presumed to have assented to the proposition,

and would remain on the premises as a tenant at will. "The presumption of a continuance of the tenancy upon the same terms, or of the character of tenancy from remaining in possession after the expiration of the term, is a rebuttable one, although it will not be overcome merely by the intention of the tenant, and it will not conclude either party as against the proof of a different agreement between the landlord and tenant or of facts which are inconsistent with the presumption." 24 Cyc. 1014(B); Puckett v. Scott, 45 Tex. Civ. App. 392, 100 S. W. 969; Tiffany on Landlord & Tenant, vol. 2, § 210, on page 1486, especially at note 89. We quote the note, which appears to us to announce a correct rule:

"So where the overholding tenant's offer of a certain rent was refused, but to his proposal to pay the rent till he found another place the landlord made no reply, and the property was placed by the latter in the hands of his agent to rent to another, it was held that there was a tenancy in accordance with the tenant's proposal till he found another place" (citing Hoffman v. McCullum, 93 Ind. 326; Lally v. The New Voice, 128 Ill. App. 455; Montgomery v. Willis, 45 Neb. 434, 63 N. W. 794).

[10] The trial court instructed the jury to find the full amount sued for; that is, rent at $100 per month, less the amount for which the property was rented to other parties, which would have left due for the 12-month term, $580, the amount sued for. The term of the original rental contract was 8 months. Appellant presents the proposition that a tenant holding over is only liable for a term equal to the term of its original lease. It has been generally held that when a lease is for the term of one year or more, the holding over will be presumed for a year. If the original term was for a number of years, an implied contract will not be presumed to extend for a longer term than one year, since such would be invalid under the statute of frauds. Roller v. Zundelowitz, 32 Tex. Civ. App. 165, 73 S. W. 1070. In the French Case, 80 Tex. 575, 16 S. W. 440, 26 Am. St. Rep. 763, supra, it is said:

"The tenant who holds over with the consent of his landlord is deemed to be in possession upon the terms of his prior lease, upon the ground that the parties are presumed to have tacitly renewed the former agreement."

If such is the presumption, then in holding over in this case the parties renewed the former agreement for eight months. We cannot see upon what theory the law will presume a longer period than the original agreement. We are aware there are a great number of cases which appear arbitrarily to fix the extended period at one year. We are inclined to follow the rule that where the contract provides for a term less than one year, in holding over the tenant will not be held to a longer term than that provided for in the contract of tenancy. Kaufman v. Mastin, 66 W. Va. 99, 66 S. E. 92, 25 L. R. A. (N. S.) 855, and notes under that case which

collate a number of authorities. Leggett v. Louisiana, etc., 134 Mo. App. 175, 114 S. W. 92.

[11] It is suggested by appellee that the facts in this case do not show an agreement to allow appellant to remain until it could get possession of the property which it had rented from Craven. We think if the appellee, by her words or conduct, induced the appellant to believe that he had her consent to remain until he could move into the other building, then she could not hold appellant under an implied renewal or an implied contract for the term. If the appellant made the proposition to appellee to remain in the house for a short time for the purpose of preparing the other place and appellee made no objection thereto, the jury might therefrom be able to presume that she assented thereto. We desire to say that the plea of holding over in plaintiff's petition, in our judgment, is not such as is required under the law. We think the appellee should at least allege that she exercised her option as lessor to hold appellant a tenant rather than as a trespasser. We think the record in this case presents the issues: First, was there an oral agreement entered into as alleged by appellee? Second, did the appellant exercise its option to renew the lease for 12 months? Third, did it remain on the property until it could get the house leased in which it was to move prepared? And did appellee assent thereto? Or were her words or conduct such as to induce appellant to believe that in remaining on her property he did so by her consent? We think the evidence in this record is sufficient to have taken the case to the jury. We overrule the second proposition under the fifth assignment.

For the reasons above pointed out, the case will be reversed and remanded.