HALL v. WILLMERING. (No. 1456.)

(Court of Civil Appeals of Texas. Amarillo. Jan. 29, 1919. On Motion for Rehearing, March 5, 1919.)

1. INJUNCTION ⊂∞108—CONDITION PRECEDENT—CONTRACT—REMOVAL OF GRAVEL.

The removal by defendant of the surface dirt preparatory to removal of gravel, under a contract whereby plaintiff gave defendant exclusive right, for a certain period, to remove gravel, and defendant agreed to perform all labor necessary for its removal, and to pay plaintiff for gravel removed, even if not making the contract irrevocable, at least gave defendant some equities in the premises, so that plaintiff, making no

⊂∞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

offer of compensation for such work, may not have injunction against removal of gravel, on the theory of the contract being terminable as unilateral and without consideration.

### 2. CONTRACTS ⬡⟹217—REMOVAL OF GRAVEL—OPTION TO CONTINUE—NOTICE.

Contract whereby plaintiff gave defendant right to remove gravel for three years, providing that if at expiration thereof, plaintiff should fail to give defendant 30 days' written notice prior to expiration, defendant should at his option have right to continue it on same terms for another such period, does not require any notice of election to continue, other than that imported from continued exercise of the privilege.

Appeal from District Court, Potter County; Hugh L. Umphres, Judge.

Action by J. F. Hall against C. E. Willmering. Judgment for defendant, and plaintiff appeals. Affirmed.

Hendricks & Mood, of Amarillo, for appellant.

Ben H. Stone and Miller & Guleke, all of Amarillo, for appellee.

BOYCE, J. Appellant, Hall, brought this suit against appellee, Willmering for injunction to restrain the said Willmering from hauling gravel and sand from a gravel pit, located on section 12, block 9, B. S. & F., Potter county, owned by Hall. The contest between the parties grows out of a contract entered into between them on September 14, 1914, in reference to this matter. This contract, so far as material to this decision, imposed the following obligations upon the respective parties: Hall granted to Willmering the exclusive right to enter on that part of section No. 12, used for gravel pits, and to remove therefrom sand and gravel as he might see fit, granting such "privilege for a period of three years from the date of this contract, it being agreed and understood that at the expiration of this contract if the party of the first part (Hall) should fail to give the party of the second part (Willmering) thirty days' written notice prior to the expiration of this contract then the party of the second part shall, at his option, have the right to continue said contract on the same terms and conditions as are set out in this contract for a period of three more years, said party of the first part granting to said party of the second part the right of way to the above premises for the purpose of hauling sand and gravel therefrom." Willmering agreed "to perform all labor necessary for the removal of said sand and gravel from the above-described premises," and to pay to the said Hall ten cents per yard for the sand and gravel taken, "the royalty due" to be paid at the expiration of each 30 days. After the execution of this contract and in pursuance to its terms Willmering entered upon said premises and did a substantial amount of work at a substantial expense in stripping off the surface soil covering the gravel in order to be able to obtain the gravel from the pit, and proceeded to haul gravel therefrom during the three years mentioned in said contract, paying to Hall the amounts due therefor under the terms of the contract. It was admitted in the pleading that Hall did not give any notice to Willmering 30 days prior to the expiration of the three-year period of an intention on his part to terminate the contract. Willmering continued to take gravel from said pit after the expiration of the three-year period, tendering Hall monthly the amounts due therefor, which payments were rejected, except one payment made in November, 1917, which was accepted by Hall, though he offered to testify that he had, prior to such acceptance, given Willmering notice that the contract had terminated. Hall, on the trial, offered to testify to the effect that Willmering did not give him any notice, either written or oral, that he desired to continue the use of said gravel pit prior to about November 7, 1917; that he, Hall, lived about three-fourths of a mile from the gravel pit, and did not see Willmering hauling any gravel therefrom during September, 1917, the last hauling before September 14, 1917, he noticed being done in July or August, and the first hauling after the said date observed by him being some time in October, 1917; that he called on Willmering on November 7, 1917, and informed him that the lease had expired, at which time Willmering claimed that it lasted three years longer, from which time forth each party understood the claim of the other. This testimony was rejected, and the court gave a peremptory instruction for appellee, Willmering. The three assignments presented are to the action of the court in giving the peremptory instruction under this state of facts.

[1] Appellant, on this appeal, relies on two propositions, which are, in substance: First, that the contract lacked mutuality and was without consideration, and was thus subject to termination at any time at the option of either party; second, that the provision for the three-year extension was an option which, to be available, must have been accepted and such acceptance communicated to Hall in some way prior to the expiration of the three-year period. We will discuss these propositions in the order named.

The contract contained no absolute agreement on the part of Willmering to do anything; the agreement to pay for the gravel which he might take and to perform the labor necessary to its taking coming into operation only as he might see fit from time to time to exercise the privilege of taking grav-

---

⬡⟹For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

el, and being an incident thereto. It is clear, therefore, that prior to the time that he stripped the ground preparatory to exercising the privilege the contract was unilateral, and might have been terminated by either party, and we are to decide the effect upon the situation that the expenditures made by Willmering in. so preparing the ground for the taking of the gravel would have upon the rights of the parties. We are referred, in support of the first proposition, to cases dealing with contracts for the sale of personal property, such as Campbell v. American; Handle Co., 117 Mo. App. 19, 94 S. W. 815, H. & T. C. Ry. Co. v. Mitchell, 38 Tex. 94, Cold Blast Transportation Co. v. K. C. Bolt & N. Co., 114 Fed. 77, 52 C. C. A. 25, 57 L. R. A. 696, and Fontaine v. Baxley, 90 Ga. 416, 17 S. E. 1015. The line of authorities is, of course, valuable as establishing principles of law that might be appropriately applied to every character of case. But the contract under consideration is more in the nature of a lease or license to mine or to do similar acts on the premises of the grantor, which may result in mutual benefit to both the grantor and grantee of the right, and there are authorities in this branch of the law which we think are more directly in point, and which will control the decision of this case. A mere license under earlier law decisions might be revoked at the will of the grantor, so the right of the licensee was analogous to that of Willmering in this case, in that it was subject to termination at the will of the grantor of the right or privilege. In many jurisdictions, however, courts of equity have interposed to protect such licensee against the arbitrary exercise of this right of revocation, where on the faith of its grant the grantee thereof had made expenditures on the land for the purpose of exercising the privilege. k. C. L. vol. 17, pp. 576–585; Washburn on Law of Real Property, vol. 1, pp. 661–673; R. C. L. vol. 18, p. 1189; 25 Cyc. pp. 645–649; Hazelton v. Putnam, 3 Pin. (Wis.) 107, 54 Am. Dec. 158; Huff v. McCauley, 53 Pa. 206, 91 Am. Dec. 203; Flickinger v. Shaw, 87 Cal. 126, 25 Pac. 268, 11 L. R. A. 135, 22 Am. St. Rep. 234; Munsch v. Stelter, 109 Minn. 403, 124 N. W. 14, 25 L. R. A. (N. S.) 727, 134 Am. St. Rep. 785, and notes. The tendency of the decisions of this state is evidently to follow this general principle of protecting the licensee under such circumstances. Risien v. Brown, 73 Tex. 135, 10 S. W. 661; J. M. Guffey Petroleum Co. v. Oliver, 79 S. W. 884; Owens v. Corsicana Petroleum Co., 169 S. W. 192; Thomas v. Junction City Irrigation Co., 80 Tex. 550, 16 S. W. 325 (expression in first column of page referred to); Ft. Worth & N. O. Ry. Co. v. Sweatt, 20 Tex. Civ. App. 543, 50 S. W. 162; C., R. I. & G. Ry. Co. v. Johnson, 156 S. W. 256. It is true that the particular questions being discussed in a great many of the authorities cited did not concern the question of consideration or mutuality of the contracts. The purpose of our reference to such authorities is to show that such decisions establish a rule which our courts seem disposed to follow, that expenditures made on the land under grant' of a license may modify and in some instances abrogate the right of revocation by the grantor that would otherwise exist. It will appear also by reference to the authorities, that there is considerable confusion as to just what the rights of the licensee or lessee are under the circumstances stated. Some of the authorities seem to proceed on the theory that the expenditure become a consideration for the grant, and it thereupon becomes irrevocable; for instance, it is said by the Supreme Court of Pennsylvania, in the case of Rerick v. Kern, 14 Serg. & R. 271, and quoted in the case of Flickinger v. Shaw, supra, that:

"A license may become an agreement on valuable consideration; as, where the enjoyment of it must necessarily be preceded by the expenditure of money; and when the grantee has made improvements or invested capital in consequence of it, he has become a purchaser for a valuable consideration. Such a grant is a direct encouragement to expend money, and it would be against all conscience to annul it as soon as the benefit expected from the expenditure is beginning to be perceived."

Other authorities merely hold that the license cannot be revoked without compensation in some way for the expenditures. In the case of Guffey Petroleum Co. v. Oliver, supra, the court construed an oil lease to be terminable at the will of either party because it was not mutual, and allowed the lessor to cancel it upon "doing equity," which consisted in payment to the lessee of the amount expended upon the land. The plaintiff in that case sued for a cancellation of the lease, and offered in his pleading to pay the lessee for such expenditures. The plaintiff's petition in this case admitted that the defendant had removed the surface dirt from a portion of the gravel pit at some expense to himself, preparatory to hauling sand and gravel therefrom, but did not offer to compensate defendant in any way for such expense. It was alleged in this connection that ten cents per yard was a low price for the gravel at the pit, and that in consideration of such low price the said Willmering agreed to perform all labor necessary for the removal of said sand and gravel from the premises, and that the removal of the surface soil was made under such agreement. It fairly appears from these allegations that the value of the gravel pit would be increased by the acts of Willmering, as whoever might thereafter take the gravel would reap the benefit of his work in preparing it for removal. It thus appears from the pleading and the evidence offered in support thereof that Willmering, under the authorities referred to, at

least has some equities in the premises. We do not think it becomes necessary to determine whether upon the making of the expenditures the contract became irrevocable during the term provided by it or whether it might be terminated upon compensation in some way, such as a court of equity might determine, to Willmering for the expense incurred in removing the surface soil from the gravel beds that he had not yet exhausted. Since plaintiff sought relief of equity by injunction to prevent any further use of the privilege without making any offer of compensation, we do not think he was entitled to a judgment under either theory of Willmering's rights.

[2] As to the second proposition, it is conceded that if the option to continue is properly a contract for an option, notice of acceptance before termination of the three years would be necessary. Appellee contends that the contract is not strictly one for an option, but is analogous to stipulations in lease contracts which provide for extension for an additional time upon expiration of the term provided for in the contract. Our examination of the authorities leaves us in considerable doubt as to whether the contract is a lease or merely creates a license. We are convinced, however, that under our decisions we may safely hold that the contract upon entry by Willmering upon the lands for the purpose of exercising the privilege created some interest in the land. Parsons v. Hunt, 98 Tex. 420, 84 S. W. 646; Benavides v. Hunt, 79 Tex. 383, 15 S. W. 398. If this be true, then there is a fairly close analogy between this contract, which provides for a continuance of this right or interest and those lease contracts which provide for extension, as referred to. In the lease contracts containing such provisions for extension, no formal notice by the lessee of his election to exercise the option is required, his continued occupancy of the premises after the expiration of the term being sufficient indication of his election to extend the term for the additional time stipulated in the contract. Street-Whittington & Co. v. Sayres, 172 S. W. 775; Tiffany on Landlord and Tenant, § 222; Underhill on Landlord and Tenant, § 803. The contract in this case, after expressly providing the character of notice that Hall should give in the event he desired to end the contract at the expiration of three years, merely provides that Willmering at his option shall have the right to continue the contract, if Hall shall fail to give the notice provided for, and does not provide for any notice, or the method of giving it, of Willmering's election to "continue the contract." Under these circumstances we think that the parties did not contemplate that any notice by Willmering was necessary other than that imported from the continued exercise of the privilege at the end of three years, and this was all that was necessary

to indicate his acceptance of the so-called option.

We are of the opinion that the judgment should be affirmed.

## On Motion for Rehearing.

Appellant strongly assails our conclusions in this case, particularly as to the second proposition discussed in the opinion. His position thereon is, in substance, that under the terms of the contract notice of election to continue the contract is required at the expiration of the three-year period, and that the analogy between this contract and the provisions in lease contracts for extensions of leases cannot be applied because in the landlord and tenant cases the tenant is in actual possession of the premises leased, so that this continued occupancy is notice, while in this case there was no possession or other overt act at the time of the expiration of the lease that would convey notice of election at the time required by the contract. The only questionable assertion in this proposition is in the first postulate; if that is correct, we would accept the proposition as proven. We cannot accept this postulate, however, without question. The authorities, as we understand them, regard a lease, providing for an extension, not as an offer to enter into a contract, but as conferring a right on the part of the lessee, subject to the conditions of the contract, to continue the enjoyment of a right already granted and being enjoyed. It is said in Tiffany's Landlord and Tenant, § 218, that:

"Such a lease for a certain term, giving the lessee a right of extension for another term named, may be regarded in either one of two ways: (1) As creating a leasehold estate in the lessee of a duration measured by the sum of the two terms, with an option in the lessee to terminate it at the end of the first-named term, either by relinquishing possession, or failing to give notice of a desire to continue possession, or otherwise, according as the language conferring the privilege may provide; or (2) as creating two estates in the lessee, one to commence upon the termination of the other, provided all conditions precedent as to election and notice are satisfied."

It is generally stated by the authorities that unless it is required by a term in the lease contract, no notice of the election by the lessee to have the term continued is required, this holding being on the assumption that such a contract contemplates that the only thing the lessee is required to do as a condition or as evidencing his election to continue the contract is to continue in possession of the premises. Montgomery v. Hamilton County, 76 Ind. 362, 40 Am. Rep. 250; Heffron v. Treber, 21 S. D. 194, 110 N. W. 781, 130 Am. St. Rep. 711; Chandler v. McGinning, 8 Kan. App. 421, 55 Pac. 103; Sheppard v. Rosenkrans, 109 Wis. 58, 85 N. W. 199, 83 Am. St. Rep. 886; Quinn v. Valiquette, 80

Vt. 434, 68 Atl. 515, 14 L. R. A. (N. S.) 965; 16 R. C. L. 885. Possession is thus not considered as satisfying a condition of notice, but as evidence of the prolongation of the term of the lease. If the exercise of the right consists in something other than possession, we see no reason why the doing of such acts after the termination of the first term in the same manner as before does not by the terms of the contract constitute the means of the indication by the grantee of his election to continue the contract for the additional term. A contract for renewal of a lease is ordinarily regarded differently. It is an option to contract, and notice of its acceptance is required, and many authorities assert that retention of possession in such case is not notice. Andrews v. Marshall Creamery Co., 118 Iowa, 595, 92 N. W. 706, 60 L. R. A. 399, 96 Am. St. Rep. 412, as well as authorities already referred to. This distinction we think destroys in a large measure the force as authority of the case of Wright v. Kaynor, 150 Mich. 7, 113 N. W. 781, referred to by appellant in his argument on motion for rehearing. The case of Falley v. Giles, 29 Ind. 115, also cited by appellant, is not on its facts in point, though some of the expressions in the opinion support appellant's position.

While the conclusion may not be free from doubt, we adhere to our construction of the contract as announced in the original opinion, and the motion for rehearing will be overruled.