# THE ATTORNEY GENERAL
## OF TEXAS
**ATTORNEY GENERAL**


January 18, 1961

Honorable H. D. Dodgen
Executive Secretary
Game and Fish Commission
Austin, Texas

Dear Mr. Dodgen:

Opinion No. WW-984

Re: Whether a permittee under a Game
and Fish Commission permit author-
izing removal of shell from Galves-
ton Bay is liable to the State for
an increase in the price to be paid
for shell ordered by the Commission
prior to the expiration of the permit.

Your letter reads:

"Effective April 25, 1954, this office renewed a shell permit
for W. D. Haden Company of Houston to remove shell from Galveston
Bay for commercial purposes. The permit as originally written pro-
vided, among other things, that the permittee shall file monthly
reports and remit to the Game and Fish Commission 7¢ per cubic yard
for all shell removed from the public waters during the month for
which the report is made. An endorsement to the permit effective
January 1, 1955, was attached to the permit on December 6, 1954. The
permit was issued for one year and expired on April 25, 1955.

"On October 1, 1954, the Game and Fish Commission adopted a
resolution increasing the price to be paid by all shell dredgers
from 7¢ to 10¢ per cubic yard effective January 1, 1955, and approved
by the Governor on November 4, 1954. All shell dredgers were properly
advised on December 6, 1954, of the increase in price and all paid it
without question except W. D. Haden Company which continued to remit
to the Game and Fish Commission on the basis of 7¢ per cubic yard.
When the Game and Fish Commission requested payment for the shell at
the rate of 10¢ per cubic yard and W. D. Haden Company refused to pay
it, a suit was filed by W. D. Haden Company in the District Court of
Galveston County when cancellation of the permit was threatened. By
agreement between attorneys, W. D. Haden Company consented to pay into
the registry of the court the sum of 3¢ per cubic yard for all shell
produced from January 1, 1955, until the expiration of the permit on
April 25, 1955. The total sum deposited by W. D. Haden Company in
the registry of the court was $21,053.87.

"In this trial of the case, judgment was rendered in favor of
the plaintiff by the trial court and was appealed by the state to the
Court of Civil Appeals for the 2nd Supreme Judicial District of Texas

where the judgment of the trial court was reversed and the case remanded to the court below with a directive that the suit be dismissed. [303 S.W.2d 443]  An appeal to the Supreme Court of Texas was taken by the plaintiff where the court upheld the judgment of the Court of Civil Appeals, reversing the judgment of the trial court, and ordered the suit dismissed. The Supreme Court's final judgment ordered the money returned to W. D. Haden Company.  [308 S.W.2d 838]

"It appears that the paramount question before the court was whether W. D. Haden Company had legislative authority to sue the state and judgment was rendered on that issue.  The question of whether W. D. Haden Company owes the additional sum of 3¢ per cubic yard for shell produced from the public waters from January 1, 1955, to April 25, 1955, was not determined by the court.

"Your opinion is respectfully requested as to whether the sum of $21,053.87 is due the state by W. D. Haden Company, representing the increase in price of shell from January 1, 1955, to April 25, 1955, and removed under authority of the above mentioned permit."

The permit involved reads as follows:

"GAME & FISH COMMISSION OF TEXAS
Austin, Texas

SAND, SHELL AND GRAVEL PERMIT

No. 243-A-6

"STATE OF TEXAS       }
County of Travis      }       TO WHOM THIS MAY CONCERN:

"PERMISSION is hereby granted W. D. Haden Company of Houston, Texas, to remove mudshell placed under the management and control of the Game and Fish Commission, as provided in Art. 4051, R.C.S., 1925, as follows:

"From an area three (3) miles north and south and five (5) miles east and west, adjacent to the Galveston Bay Oil Field:

"SUBJECT TO THE FOLLOWING PROVISIONS:

"First.  That the permittee herein shall make sworn report not later than the 10th day of each month on all materials removed from the

public waters during the preceding month at the location
described above, and shall maintain permanent records of
all such materials produced so that such records may be
inspected by a representative of the Game and Fish Commission
at any time.  A report each month is requested whether any
materials are produced or not.

"Second.  That the permittees shall remit to the Game and Fish
Commission 7¢ per cubic yard on all sand and shell and 8¢ per
cubic yard on all gravel removed as above provided during the
month for which each report is made.

"Third.  That the permittee shall not interfere with any State
or Federal inprovements, navigation, fish life, riparian rights
or landowners in or along any stream or violate any law or regu-
lation of the Game and Fish Commission pertaining to the taking
of sand, shell and/or gravel.  If any shell is to be produced
under this permit, it is especially agreed and understood that
the permittee shall not operate within 1500 feet of a live oyster
reef.

"Fourth.  Nor shall permittee dredge any shell not covered with
at least two feet of soil silt or mud.  Nothing herein shall be
construed to allow dredging in such place or manner so as to
damage the property of any riparian owner.

"Fifth.  That the bond of $5,000.00 now on file in the office of
the Game and Fish Commission with American General Insurance Company
as surety and the permittee herein as principal, conditioned upon
the faithful compliance of said permittee with the terms and condi-
tions of this permit, shall be used to recover any sum or sums of
money to the extent of $5,000.00 that may be due the State by virtue
of this permit.

"Sixth.  That should the permittee herein violate any condition of
this permit or violate any law or regulation pertaining to the taking
of sand, shell and/or gravel, the Game and Fish Commission may cancel
this permit; otherwise, it shall expire on the 25th day of April, A.D.,
1955.

                    "THIS PERMIT IS NOT EXCLUSIVE - NOT TRANSFERABLE.

"Given under my hand and seal of office at Austin, Texas, this the 15th
day of April, A.D., 1954.

                              GAME AND FISH COMMISSION


                              BY:  H. D. Dodgen
                                   Executive Secretary"

Article 4051, Vernon's Annotated Texas Civil Statutes reads in part as follows:

"All . . . bays within the tidewater limits . . . together with the marl and sand of commercial value, and all the shells, mudshell or gravel of whatsoever kind that may be . . . in or upon the bottoms of any . . . bay . . . are hereby placed under the management, control and protection of the Commissioner. None of the marl, gravel, shells, mudshells or sand included herein shall be purchased, taken away or disturbed, except as provided herein, . . . ."

Article 4052, V.A.T.C.S., reads in part as follows:

"The Commissioner is hereby invested with all the power and authority necessary to carry into effect the provisions of this chapter, and shall have full charge and discretion over all matters pertaining to the sale, the taking, carrying away or disturbing of all marl, sand, or gravel of commercial value, and all gravel and shells or mudshell . . . and their protection from free use and unlawful disturbing or appropriation of same, with such exceptions as may be provided herein."

Article 4053, V.A.T.C.S., reads in part as follows:

"Anyone desiring to purchase any of the marl and sand of commercial value and any of the gravel, shells or mudshell . . . or otherwise operate in any of the waters or upon any . . . bay . . . shall first make written application therefor to the Commissioner designating the limits of the territory in which such person desires to operate. If the Commissioner is satisfied that the taking, carrying away or disturbing of the marl, gravel, sand, shells or mudshell in the designated territory would not damage or injuriously affect any oysters, oyster beds, fish inhabiting waters thereof . . . and that such operation would not damage or injuriously affect any island, reef, bar, channel, . . . used for . . . navigation . . . he may issue such permit to such person after such applicant shall have complied with all requirements prescribed by said Commissioner. The permit shall authorize the applicant to take, carry away or otherwise operate within the limits of such territory as may be designated therein, and for such substance or purpose only as may be named in the permit and upon the terms and conditions of the permit. No permit shall be assignable, and a failure or refusal of the holder to comply with the terms and conditions of such permit shall operate as an immediate termination and revocation of all rights conferred therein or claimed thereunder. No special privilege or exclusive right shall be granted to any person, association of persons, corporate or otherwise, to take or carry away any of such products from

<u>any territory</u> or to otherwise operate in or upon any island, reef, bay, lake, river, creek, or bayou included in this chapter." [Emphasis added]

Article 4053d, V.A.T.C.S., reads in part as follows:

"The Game, Fish and Oyster Commissioner . . . may sell the marl, gravel, sand, shell or mudshell . . . upon such terms and conditions as he may deem proper, but for not less than four (4¢) cents per ton, and payment therefor shall be made to said Commissioner. . . ."

In 1929 the 41st Legislature abolished the office of Game, Fish and Oyster Commission, and created the Game, Fish and Oyster Commission, and conferred the powers formerly vested in the single Commissioner upon such six-member Commission, which act became Article 978f of Vernon's Annotated Penal Code of Texas.

In 1951 the 52nd Legislature abolished the six-member Game, Fish and Oyster Commission, and created the nine-member Game and Fish Commission, and conferred the powers formerly vested in the six-member Commission upon the new nine-member Commission, which act became Article 978f-3 of Vernon's Annotated Penal Code of Texas.

A license affecting real property amounts to a mere privilege and imports no estate or interest in the property.  27 Tex.Jur. page 856.  The statutes plainly refer to the authorization to remove the shell as a "permit", and the form of such authorization complies with the statute in this regard.  The courts in Texas frequently refer to the agreement under which the permit is granted as a contract, subject to the special rules governing licenses.

As a rule a license is revocable at the will of the grantor, 27 Tex.Jur. page 860.  A license which is of a revocable nature may be modified by the licensor giving timely notice thereof.  53 C.J.S. page 813.  Formerly the rule allowing revocation was applied virtually without qualification, but the courts of Texas now recognize four situations in which they will refuse to sanction a revocation of a license by the licensor:  (1)  where a parole easement, which otherwise would amount to no more than a bare license, has been taken out of the statute of frauds by part performance; (2)  where some consideration has been given to keep the license alive; (3)  where the license is directly connected with the grant of an interest in land, the enjoyment of which depends upon the continued existence of the license; and (4) where the licensee has been induced to expand a considerable amount of money or labor in reliance on the subsistence of his license.  27 Tex.Jur. pages 860-861.

A state has a right to contract the same as a corporation or individual, so long as authority is granted by the Legislature.  38 Tex.Jur. pages 635-636.

It is not for judicial consideration whether a contract regular on its face, is beneficial to the state or whether it should have been made.  38 Tex.Jur. page 637.

The question presented is whether the Permit granted by the Game and Fish Commission may be modified by the licensor, the Game and Fish Commission, by raising the price of shell an additional 3¢ per yard, contrary to the original terms of the Permit, prior to its expiration date of April 25, 1955. And this in turn depends upon whether or not the permit or license is revocable. As we have seen, ordinarily a license may be revoked at the will of the licensor, unless it falls within one of the exceptions listed above.

In the case of Hall v. Willmering, 209 S.W. 226 (Tex.Civ.App. 1919 writ of error refused), Hall and Willmering had entered into a contract, whereby Hall granted to Willmering the exclusive right to enter on Hall's land, and to remove therefrom gravel and sand for a period of three years, Willmering to pay Hall 10¢ per yard for sand and gravel taken, to be paid every thirty days. The contract also provided that if Hall should fail to give notice of termination of the contract thirty days before expiration of the three years, then at Willmering's option the contract would exist for another three years.  After the contract was executed, Willmering entered upon the premises, and stripped off the surface soil in order to be able to take the sand and gravel.  When the three-year period expired, Hall failed to give notice, and Willmering continued to take gravel and sand and tendered his monthly payments for the sand taken.  Hall brought suit to enjoin Willmering from further hauling sand and gravel from the pit.  The trial court gave judgment for the defendant, and plaintiff Hall appealed.

The Court of Civil Appeals in the Hall case, 209 S.W. 226, said at page 227:

> "The contract contained no absolute agreement on the part of Willmering to do anything; the agreement to pay for the gravel which he might take and to perform the labor necessary to its taking coming into operation only as he might see fit from time to time to exercise the privilege of taking gravel, and being an incident thereto.  It is clear, therefore, that prior to the time that he stripped the ground preparatory to exercising the privilege the contract was unilateral, and might have been terminated by either party, . . .  But the contract under consideration is more in the nature of a lease or license to mine or to do similar acts on the premises of the grantor, which may result in mutual benefit to both the grantor and the grantee of the right, and there are authorities in this branch of the law which we think are more directly in point, and which will control the decision in this case.  A mere license under earlier decisions might be revoked at the will of the grantor, so that the licensee was analogous to that of Willmering in this case in that it was subject to termination at the will of the grantor of the right or privilege.  In many jurisdictions, however, courts of

> equity have interposed to protect such licensee against arbitrary exercise of this right of revocation, where on the faith of its grant the grantee thereof had made expenditures on the land for the purpose of exercising the privilege. . . . The tendency of the decisions of this state is evidently to follow this general principle of protecting the licensee under such circumstances. . . ."

The Court in the Hall case went on to quote with approval the Supreme Court of Pennsylvania in Rerick v. Kern, 14 Serg. & R. 271, in which the latter court said:

> "A license may become an agreement on valuable consideration; as, where the enjoyment of it must necessarily be preceded by the expenditure of money; and when the grantee has made improvements or invested capital in consequence of it, he has become a purchaser for a valuable consideration. Such grant is direct encouragement to expend money, and it would be against all conscience to annul it as soon as the benefit expected from the expenditure is beginning to be perceived."

We have no facts submitted to us which would show what expenditures of money, if any, the licensee, W. D. Haden Company, has made upon the consideration that it had this permit or any annual renewal thereof. But it is inconceivable that an operation of this type could be undertaken without a substantial expenditure of money for barges, dredging equipment, ownership or rental of docks, trucks, etc. It is true that the original permit was only for one year, and each renewal thereafter was for a like period time, and that the licensee undertook this operation fully understanding that the Commission might raise the prices at the time of each renewal, or refuse to renew the permit at all. But at least the licensee was able to measure each expenditure of its money against a definite term and a set price for the duration of that term, in making its business calculations. In all good conscience, it would not be equitable and fair for the State of Texas to raise the price of shell, making it applicable to a licensee prior to the end of the term of the permit granted. See also Risien v. Brown, 73 Tex. 135, 10 S.W. 661 (1889); Markley et al v. Christen et al, 226 S.W. 150 (Tex.Civ.App., 1920, dism.)

We hold, therefore, that the permit granted to W. D. Haden Company in April , 1954, to expire on April 25, 1955, became irrevocable by the Game and Fish Commission when the licensee entered upon the operation of dredging for shell, expending its money in so doing. When the license or permit became irrevocable, it was not subject to modification of its provisions during the period of time for which it was granted, such as a raise in prices, to the detriment of the licensee. The permit obviously can be revoked for cause, a number of such causes being enumerated in the permit itself, but this is a different matter altogether.

## SUMMARY

Where a licensee obtained a permit from the Game and Fish Commission to take sand, gravel and shell from the bottom of a bay, which permit had a definite expiration date and a fixed price per cubic yard for all sand, gravel, or shell taken, and thereafter the licensee entered upon the operation of dredging and taking such materials and expending its money in such operation, such permit became irrevocable for the duration of its term, except for cause.

Where a license to take sand, gravel and shell becomes irrevocable, excpet for cause, the Game and Fish Commission cannot raise the price of sand, gravel and shell, and make such increase in price applicable to such licensee contrary to the terms of the permit when granted, until after expiration of the current permit.

Yours very truly,

WILL WILSON
Attorney General of Texas

By:

RILEY EUGENE FLETCHER
Assistant

APPROVED:

OPINION COMMITTEE
W. V. Geppert

W. Ray Scruggs
Linward Shivers
Joe McMasters
Leon Pesek

REVIEWED FOR THE ATTORNEY GENERAL
BY:  Leonard Passmore